## Andrew J. Cox
### *v.*
## John Montgomery.

1. FRAUD—*false representations by vendor of land.* Where one person, exchanging lands with another, represents his own to be a well-timbered tract, worth a good deal, and assessed at $15 per acre for taxation, and the other party, having never seen the land, which was distant nearly a hundred miles from the place of the trade, takes it on the strength of these representations, and the land, in fact, has been only assessed at from $2.12 to $6 per acre, and about one-half the timber, including all that was easily accessible, has been cut off: *Held,* that these are such false representations as would entitle the injured party to avoid the contract, if he seeks to do so within a reasonable time after the discovery of the fraud.

2. SAME—*what is reasonable time for filing bill.* A bill to avoid a contract for the sale of land because of fraudulent representations, must be filed in a reasonable time, and eighteen months after the discovery of the fraud would be an unreasonable delay.

APPEAL from the Circuit Court of Iroquois county; the Hon. CHARLES R. STARR, Judge, presiding.

This was a bill in chancery filed by the appellee against the appellant to avoid a contract for the exchange of lands on the ground of fraudulent representations, made by the appellant. The bill was filed in November, 1863, and the summons made returnable to the February term, 1864, and coming on for hearing at a subsequent term, the court decreed in favor of the complainant, whereupon the defendant appealed. The facts, so far as they are material, are stated in the opinion of the court.

Messrs. Wood & Long, for the Appellant.

Messrs. Roff & Doyle, for the Appellee.

Mr. Justice Lawrence delivered the opinion of the Court:

In November, 1861, Cox, the appellant, went to the house of Montgomery, the appellee, in Iroquois county, and proposed an exchange of eighty acres of land owned by the former in Coles county for the farm on which the latter resided in Iroquois county. He represented the Coles county land to be a well-timbered tract, the timber not having been cut, and in reply to a question from Montgomery as to the value of the land, said it was worth a good deal, and was assessed for taxation at $15 per acre. The exchange was not, at that time, consummated. Cox went to Indiana, but returning in January, 1862, the trade was closed, deeds were exchanged, and Cox paid Montgomery $300 as the difference between the values of the two tracts. This bill is filed by Montgomery for the purpose of rescinding this contract, on the ground of fraudulent representations, and the court below pronounced a decree of rescission, from which Cox has prosecuted an appeal.

We have no doubt that fraudulent representations of material facts were made by Cox, and if the bill to rescind had been filed in due season, we should have no hesitation in sustaining the decree. Montgomery had never seen the Coles county land. It was situated nearly a hundred miles from the place of the trade. He therefore dealt with Cox wholly upon faith

in the latter's representations; and apart from whatever was said that might be considered merely matter of opinion, or speculative commendation, as to the advantages possessed by the land, there were two important facts, in regard to which Cox made false statements, with full knowledge of their falsity. The first was, that the land was assessed for taxes at $15 per acre. The proof shows that the land had never been assessed at more than six dollars per acre, and that the assessment had varied from that sum down to two dollars and twelve cents per acre. Here is a statement grossly false, as to the valuation placed upon the land by a disinterested person, whose official duty it was to value it correctly. The proof in the case shows the land to be really worth from three to five dollars per acre. The other false representation related to the condition of the timber. Cox stated that it was good, and wholly uncut. The proof shows that about one-half had been cut off for years, including all that was easily accessible, in consequence of the broken character of the surface. As the value of the land was considered to consist, in great part, in the timber, the importance of this representation is manifest. Cox knew that Montgomery was dealing with him in full reliance upon his statements, which he professed to make from his personal knowledge of the land, and this fact imposed upon him an additional obligation to be truthful, which a man of ordinary uprightness would have jealously respected. It would be a sorry administration of justice that would sanction such a palpable fraud by crying *caveat emptor.*

Still this species of remedy must be invoked with reasonable diligence. In a country where the values of real estate change as rapidly as in Illinois, it would be clearly unwise to permit a purchaser of land to retain it for nearly eighteen months after the discovery of the fraud before filing his bill to rescind. This is an unreasonable delay, which a court of chancery cannot tolerate. In this case, the trade was consummated in January, 1862, and the bill was filed November 27, 1863. Montgomery visited the land in Coles county about six months after the exchange. He delayed filing his bill about seventeen months after the

discovery of the fraud. There is an allusion made in the brief of counsel to a former suit dismissed on a technical, ground. There is, however, nothing in the record showing such suit to have been instituted. But we observe that the depositions in this record are dated of a day prior to the filing of the bill, and we suppose they were taken in a former suit and filed in this by agreement. The record, however, is wholly silent.

We must reverse and remand the cause, with leave to the appellee to explain, if he can, the delay in the institution of his suit.

*Decree reversed.*