## Milo G. Kellogg v. Western Electric Co. et al.

67   53
168s 240

1. LIMITATIONS—*Constructive Trusts—Fraud.*—The statute of limitations is not necessarily controlling as to the time within which relief is to be sought in the case of a constructive trust by reason of fraud. A demand may be stale and not entitled to relief under the circumstances of the case, although much less than the time allowed by the statute of

limitations has elapsed; and so a party may be entitled to relief, although much more than the statutory limit has elapsed.

2. SAME—*Where a Party Has Knowledge of Fraud—Laches.*—If a party has knowledge of the fraud, a want of evidence will not excuse his delay, nor will poverty or inability to prosecute the action. If there has been great delay, the courts will require very clear evidence to impeach a transaction as fraudulent, and to convert the fraudulent party into a trustee.

3. SAME—*Stale Claims in Equity.*—A court of equity will often treat a lapse of a less period than that provided in actions of law as a presumptive bar on the ground of discouraging stale claims, gross laches or unexplained acquiescence in the assertion of an adverse right. Fraud is not a sufficient excuse for the laches of the complainants.

**Bill for Relief.**—Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 5, 1896.

## STATEMENT OF THE CASE.

This is an appeal from a decree dismissing a bill in substance as follows :

" Milo G. Kellogg brings this his bill against the Western Electric Manufacturing Company and the Western Electric Company, successor thereto.

And thereupon your orator says that in the year 1879 he was an officer and employe of the Western Electric Manufacturing Company, a corporation organized for the purpose, among other things, of manufacturing and selling electrical apparatus and machinery under contract and otherwise, and especially apparatus, appliances and instruments connected with the art of telegraphy, and the then modern art of telephony. That it was not any part of his duties as such officer and employe to make or attempt to make discoveries in said arts or improvements in any of the instruments or apparatus used in connection therewith, nor was he under any contract or obligation, express or implied, which required him to make or patent, or turn over to said company or any person or corporation, for its use or otherwise, any improvements or discovery or patent that he might claim therefor, or to give to such corporation, or to any person or corporation, for its use, the benefit of any

discovery or patent which he might obtain therefor in either of said arts, or in or to any instrument or appliances required for, or capable of use in connection therewith, but by the terms of his employment he was at liberty to make and own all such improvements and patents therefor as fully and to the same extent as if he had no connection with said company.

That in October, 1879, he invented what is now known as his improvement in multiple switch-boards for telephone exchanges, and which invention was afterward, to wit, on November, 1884, patented to him, assignor, by mesne assignments to the Western Electric Company, defendant herein.

Your orator further states that the circumstances under which he made an assignment of said inventions to the first named defendant, were as follows: He had, prior to April 5, 1881, five applications pertaining to his improvements in telephony pending in the United States Patent Office, and in all of which George P. Barton, who was and is the patent solicitor of said company and is now the attorney of said defendants, was his attorney of record duly appointed by him as such by written powers of attorney, filed in the patent office with said applications; that in April, 1881, said Barton prepared an assignment of applications to the Western Electric Manufacturing Company, which your orator signed and gave back to said Barton, expecting to receive reasonable compensation for said patents from said company, and executing and delivering the same, relying upon that understanding that had been induced from the fact that the executive officers and representatives of the majority of the stock of said company had determined upon the policy of obtaining control of all telephone patents within their ability or power, in order that they might build up a large and successful business for said company, and to that end had theretofore instructed your orator as superintendent to pursue that policy and purchase all such patents which, in the opinion of the managing officers of said company would probably prove advantageous to that end.

Your orator, therefore, when said attorney asked him to assign said pending applications, did so, fully understanding and believing that he would be adequately compensated for the same; all of which said company and its managing officers well knew, and accepted said transfer with that understanding. That soon after the making of said assignment your orator stated to General Anson Stager, the then president of the Western Electric Manufacturing Company, that he expected to be allowed reasonable compensation on account of the assignments of his applications (including said multiple switch-board application), but your orator and said officer failed to come to any agreement as to the amount of such compensation; that the invention included in said multiple switch-board application was by far the most important and valuable of the five applications, but that the value of the invention was then uncertain, the claims of the application being then or immediately and for a long time afterward involved in much confusion and doubt; that said Barton also during the same period was engaged in prosecuting an application for one Scribner for a like invention, in which proceedings, as will appear from the record of the patent office, the substantial invention of your orator was, either because the said Barton believed that said invention was in reality the invention of Scribner and not of your orator, or because Scribner's invention had been bought by said company and your orator's invention had not been bought, or through mistake or inadvertence of said attorney, but without your orator's knowledge or consent, disclaimed as the invention of your orator and inserted among the claims of said Scribner, upon learning which your orator interfered and demanded that such disclaimer should be withdrawn, which was done, and upon subsequent adjudication with said Scribner, who was then the paid inventor of said company, having a contract with him by which it was entitled to all inventions by him made, your orator was awarded priority and given a patent embracing the very matter so disclaimed.

Your orator further shows to the court that he was at

this same period a large stockholder in said company, and believing that the use of said patent by said company would be advantageous to said company and to him, both as a stockholder and owner, did not press the sale thereof while such diverse views existed respecting its value, but allowed said assignment to stand, with such legal or equitable rights to the company and to himself as might result therefrom; all of which the officers and agents of said company well knew, and by their conduct, at least, assented thereto.

That in pursuance of such design the said claim for a patent was prosecuted through the patent office, said company and its successor hereinafter named contributing and paying the attorney's fees and costs thereof, and your orator contributing much time and effort, exceeding many times the value of the expenditures made by the defendants, all of which resulted in the favorable action of the patent office and the issuance of the patent, as hereinbefore set forth.

And your orator denies that at any time it was within the contemplation of your orator, or of any of the officers of said company, that by making said assignment without compensation under the circumstances herein set forth, or allowing said company to retain said title in its name, that your orator made, or intended to make, a gift of such invention to said defendant, or had parted with his title, otherwise than as herein set forth.

And your orator further avers that at the time he made his said invention in multiple switch-boards and filed his application for a patent therefor and executed said assignment to the Western Electric Manufacturing Company, and asked for compensation for the same from the president of the said company, as herein set forth, said defendant was a rival and competitor of the American Bell Telephone Company and other companies and working in opposition to its interests and plans, and that it would have been possible for him, had said company not promised to give him a reasonable compensation and acquiesced to his demand that he should receive such reasonable compensation for his invention, to have made arrangements with other companies

to that end. But in 1884, when the patent was at length awarded to your orator under the circumstances hereinbefore set forth, and after the litigation in the patent office brought about through the action of the said attorney as aforesaid, all these rivals and conflicting interests had substantially been settled through consolidation, contract or otherwise, and the American Bell Telephone Company had secured to itself and to the companies in which it owned a majority of the stock an absolute monopoly in the art of telephony, and it or its related or subordinate companies were, therefore, the only possible purchasers of your orator's patent.

That by this consolidation and arrangement the American Bell Telephone Company became the owner of the majority of the stock in said Western Electric Company, and thereby and through such consolidation of interests the Western Electric Company became the manufacturing company of telephonic instruments and appliances for said Bell company. Your orator, therefore, having no other possible purchaser for said patent, being then a large stockholder in said Western Electric Company, and it being impossible to then determine the value of such invention, owing to its relations with other patents in the same field owned and controlled by that interest, and the then condition of the art of telephony and the uncertainty as to the future use of the telephone, and the cost of maintenance and operation of the same, deemed that it would be best for him to rely upon the understanding that he should receive reasonable compensation for his patent and allow time to determine what such reasonable compensation would be, and has therefore, as he submits he might of right do, awaited the result of events in order that some just basis might be arrived at for the purpose of determining such question of reasonable compensation.

Your orator further states that said defendant, now unjustly taking advantage of the situation, well knowing that it has never paid or rendered any compensation to your orator for or on account of said invention, and that it has

derived large profits therefrom, now refuses to recognize your orator's interest therein, and seeks to deny him all compensation therefor, all of which conduct is contrary to equity and good conscience.

Your orator avers that the said Western Electric Company, although having full notice as aforesaid, has failed to account to your orator for the large profits which it has made from and on account of its control and possession of said patent, though your orator has requested it to come to an account therein many times since the 23d day of October, 1891, but not before, at about which time he withdrew his offer for sale, and now, greatly to your orator's surprise and disappointment, denies that your orator is the legal or equitable owner of said patent, or entitled to an account of the large profits it has derived therefrom or any part thereof; and the said defendants aver, as the ground of said denial, that your orator's right to said patent, or to an account of the profits arising therefrom, has been lost by laches and barred by the statute of limitations; whereas, your orator is informed and believes he has, and always had, a perfect right to allow said company to hold title in his property by his consent and acquiescence, and that there had never been any adverse holding by said defendants, or either of them, and the use by said defendant was consistent with the interests of your orator and said defendants, and was advantageous thereto, and was never repudiated by said defendants, or either of them, until on or about the 15th day of December, 1891, at about which time your orator, being then for the first time advised that the defendant, the Western Electric Company, denied your orator's interest in said patents as aforesaid, demanded an accounting of all profits, which was refused by said company.

Your orator prays that the said defendant, the Western Electric Company, may be decreed to hold the title to patent No. 308,315 in trust for your orator as the equitable owner thereof; that the said defendants may be decreed to come to account to and with your orator for any and all sums by them, or either of them, due for or on account of

any royalties, license fees, increased profits through manufacturing apparatus and appliances containing or embodying the said invention of your orator, and all other property or gains of every kind and description whatsoever to it accruing by reason of its control, possession and use of said patents and the principles protected thereby and embraced therein, and be required to pay to your orator such of said profits as upon a full account and examination of the facts may seem to the court equitable and just.

And may it please your honor to grant all such other and further relief in the premises as may be in accordance with equity."

A demurrer to the bill having been sustained, the complainant has appealed to this court.

CHARLES H. ALDRICH, attorney for appellant.

WILLIAMS, HOLT & WHEELER, attorneys for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The bill filed by appellant is based upon the idea that appellees took title to the patent mentioned, under an implied trust to hold the same and account to appellant for profits derived therefrom. There is nothing that amounts to a charge of an express or agreed trust. The allegation that the complainant assigned the patent, fully understanding and believing that he would be adequately compensated for the same, and that the company knew this and accepted said transfer with that understanding, is, in the absence of any setting forth of what the actual written assignment was, or any statement that there was anything more than a mere mental understanding, not a charge of an express trust.

Was there an implied trust? The bill sets forth that the attorney of the company " prepared an assignment of applications to the Western Electric Manufacturing Company, which your orator signed and gave back to said Barton, ex-

pecting to receive reasonable compensation for said patents from said company, and executing and delivering the same, relying upon that understanding, that he was to receive reasonable compensation from the company, that had been induced from the fact that the executive officers and representatives of the majority of the stock of said company had determined upon the policy of obtaining control of all telephone patents within their ability or power, in order that they might build up a large and successful business for said company, and to that end had, theretofore, instructed your orator as superintendent to pursue that policy and purchase all such patents which in the opinion of the managing officers of said company would probably prove advantageous to that end.

Your orator, therefore, when said attorney asked him to assign said pending applications, did so, fully understanding and believing that he would be adequately compensated for the same; all of which said company and its managing officers well knew and accepted said transfer with that understanding."

It thus appears that complainant's understanding that he would be adequately compensated for assigning his applications for patents, was based upon his knowledge of the policy, determined upon by the company, to obtain control of telephone patents, and its instructions to him to purchase such patents, and not upon any holding out or promise made to him.

The bill also sets forth a reason operating upon his mind inducing the assignment, and explaining the manner in which he expected to derive benefit therefrom, in the following allegation :

"Your orator further shows to the court that he was at this same period a large stockholder in said company, and believing that the use of said patents by said company would be advantageous to said company and to him, both as a stockholder and owner, did not press the sale thereof while such diverse views existed respecting its value, but allowed said assignment to stand, with such legal or equitable rights

to the company and to himself as might result therefrom; all of which the officers and agents of said company well knew, and by their conduct, at least, assented thereto."

There is in the bill no charge that there was an agreement or understanding that the company should account to him for use or profits; the charge is that the company knew that complainant understood "that he would be adequately compensated for the same" (that is, for the assignment of an application for a patent), as the bill charges, of "then uncertain value." The charge is not that the complainant understood that the company would hold the patent in trust or account to him for profits. If any cause of action is shown by the bill, it is in assumpsit for the value of the assigned application at the time of the assignment.

Waiving other consideration, we are of the opinion that the complainant has been guilty of such laches as warrants a refusal by a court of equity to entertain his claim. The assignment appears to have been made in April, 1881; soon afterward complainant attempted to come to an agreement with the company for a reasonable compensation on account of the assignment, and failed.

October 23, 1891, he first asked the company to account for profits. December 15, 1891, it refused; and February 20, 1894, he filed his bill.

An absolute assignment in 1881, of an application of uncertain value, which, it is charged, has since come to be of great value, is asserted, in 1894, to have been the creation of a trust to pay the expenses of obtaining, holding, managing and to account for profits of an expected patent.

" The statute of limitations is not necessarily controlling as to the time within which relief is to be sought in the case of a constructive trust by reason of fraud. A demand may be stale and not entitled to relief under the circumstances of the case, although much less than the time allowed by the statute of limitations has elapsed; and so a party may be entitled to relief, although much more than the statute limit has gone by. * * * If a party has knowledge of the fraud, a want of evidence will not excuse his delay, nor

will poverty and an inability to prosecute the action. If there has been great delay, the courts will require very clear evidence to impeach a transaction as fraudulent, and to convert the fraudulent party into a trustee." 1 Perry on Trusts, 3d Ed., Sec. 230; Pratt v. California Mining Co., 24 F. Repts. 869; Twin Lick Oil Co. v. Marbury, 91 U. S. 587; 12 A. & E. Ency. of Law, 546.

In Castner v. Walrod, 83 Ill. 171, the court said :

" A court of equity will, however, often treat a lapse of a less period than that provided in actions of law as a presumptive bar, on the ground of discouraging stale claims or gross laches, or unexplained acquiescence in the assertion of an adverse right. 2 Story, Eq. Jur., Sec. 1520. * * * If fraud had been established, that can not be held a sufficient excuse for the laches of the complainants." * * *

. The case of Cox v. Montgomery, 36 Ill. 396, was a bill in equity to avoid a contract for the exchange of lands on the ground of fraud. The proof established the existence of fraud, but in deciding the question in regard to time in which a bill was filed, it was said : " This species of remedy must be invoked with reasonable diligence. In a country where the value of real estate changed as rapidly as in Illinois, it would be clearly unwise to permit a purchaser of land to retain it for nearly eighteen months after the discovery of the fraud before filing his bill to rescind. This is an unreasonable delay which a court of chancery can not tolerate."

The decree of the Superior Court is affirmed.