## NATHANIEL HECKARD

*v.*

## EDWARD SAYRE.

1. VENDOR—*forfeiture.* Where, in a contract for the sale of lands, time is made of the essence of the contract, and the purchaser does not tender payment of the last installment until six months after it falls due, and shows no excuse for such default, except that at the maturity of the payment he was engaged in the performance of his duties as clerk of the Circuit Court, he is not entitled to a decree for specific performance.

2. SAME. If, however, the vendor should collect the unpaid purchase-money, he could be compelled to convey.

WRIT OF ERROR to the Circuit Court of Peoria county.

This was a bill in chancery brought by the purchaser of a tract of land against the vendor to compel a specific performance. The Circuit Court granted the prayer of the bill, and the defendant sued out a writ of error. The facts appear in the opinion.

Messrs McCULLOCH & TAGGART, for plaintiff in error, submitted the following points:

. This was a bill to compel the specific performance of a contract for the sale of land, upon which defendant in error paid $105.59 cash at the time of the purchase, which was September 18, 1857, and gave his two notes for the balance, one of $494.11, payable October 25, 1857, which was paid at maturity, and the other for $300, payable September 1st, 1858.

The contract is in the form of a bond, in the penalty of $1,500, conditioned to make a quit-claim deed for the premises in controversy, upon the payment of the notes *as soon as they should respectively become due and payable,* taxes, &c., but with the provision that if said notes should not be paid as they should respectively become due, then the said obligation to be forever *void in law and equity ;* and with the further provision *that the time therein stipulated for the payment of said notes, and each of· them, should be regarded as of the essence of the contract, and that non-payment of either of said notes when due should be considered as an avoidance of said bond, and an absolute forfeiture of the payments that might have previously been made.*

There is nothing in this case which will authorize a court of equity to compel a specific performance.

I. The rule is, that equity compels a specific performance whenever a contract is broken which was binding at law, and the remedy at law is plainly inadequate. 2 Pars. on Contr. 511; *Flint* v. *Brandon,* 8 Ves. 163; Adams Eq. 77, n. 1.

In this case there is no breach of covenant, either alleged or proven, which would entitle a party to a recovery at law. The defendant in error was in default on the day when payment was to be made, and no subsequent tender would render the contract binding at law upon Heckard. *City Bank* v. *Cutter,* 3 Pick. 414; *Dewey* v. *Humphrey,* 5 id. 187; *Maynard* v. *Hunt,* id. 240; *Gould* v. *Banks,* 8 Wend. 565; *Suffolk Bank* v. *Worcester Bank,* 5 Pick. 106; *Hume* v. *Peploe,* 8 East, 168.

The contract sought to be enforced is therefore a different contract from that which is set out in the bill.

The bill seems to proceed upon the ground that Heckard was bound to tender the deed on the day named, or his right to forfeit would be waived. This is not necessary. The party who intends to insist upon the binding force of the *contract,* must make the tender in order to prevent a default on his part. The party intending to insist upon the *forfeiture,* need make no tender until put in default by the other party's offering to perform. *Andrews* v. *Sullivan,* 2 Gilm. 334; *Anderson* v.

*Frye*, 18 Ill. 94, and cases cited; *Doyle* v. *Teas*, 4 Scam. 265; *Wells* v. *Smith*, 7 Paige, 22; *Scott* v. *Fields*, 7 Ohio, 908.

II. There was no waiver of the forfeiture. The contract is express, that time was of the essence of the contract, and that non-payment on the day named should be an avoidance of the bond, *both at law and equity.* This is a contract, the validity of which courts of equity are bound to recognize; and although they incline against forfeitures, and will regard slight acts on the part of the party entitled to the forfeiture, as a waiver thereof, yet when a party has deliberately contracted that non-payment on the day named *shall work a forfeiture*, the court will not undertake to make a different contract for him in case of his failure to perform according to its terms. Pars. on Contr. 541; *Smith* v. *Brown*, 5 Gilm. 309; 1 Sug. on Vend. 444; Sto. Eq. Juris. 776; 1 Russell, 376; 2 Linen, 78; *Kemp* v. *Humphreys*, 13 Ill. 573; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *Notson* v. *Barrett*, 1 Iowa, 302; *Bondine* v. *Glading*, 9 Harris, 50.

We look through this case in vain for any evidence, even the slightest, that Heckard for one moment waived his right of forfeiture after that right had accrued.

Immediately after the day named in the contract for the payment of the money, Heckard made entry upon the premises. On the 7th September, 1858, Sayre tendered the money, and demanded a deed, which was refused. On the 18th of September, 1858, he made a written demand for possession, which was refused, and on the 18th of May, 1859, he made a second demand for possession, which was refused. There is no other evidence of the acts or sayings of Heckard after the 1st of September, 1858. One witness testifies to a conversation between *Meeker and Sayre*, going to show that Heckard had agreed with Meeker to deliver Sayre's portion of the rent after the 1st of September, 1858. This being simply a conversation *inter alios*, is no evidence against Heckard; and if he did agree to complete Meeker's contract for rent with Sayre, by delivering a portion of the crop, it does not show any intent to treat the contract between him and Sayre as still subsisting.

III.   The decree in this case is wholly unsustained by legal evidence.   There is no pretense whatever that Sayre literally complied with his contract.   The only ground, therefore, he can have for specific performance is a waiver of the forfeiture. The only conversations proven that have any bearing on the case that took place after the 1st September, 1858, are those with Bryant, in which he stoutly refused to deliver possession ; the conversation between Meeker and Heckard in presence of Peter Crook, in which Meeker told Heckard that he was going to deliver possession to Sayre, from whom he had rented, and his refusal to accept the tender and make the deed.   All other conversations testified to were simply declarations between other persons, and, consequently, no evidence against Heckard. There is no evidence, therefore, of any waiver of the forfeiture, nor can we see any valid excuse for the non-performance by Sayre of his part of the contract.   It was no fault of Heckard's that Sayre was prevented by official duties from getting the money, besides, this was the source from which he expected to get it.   The great difficulty in collecting money is a reason against the equity of the bill rather than in its favor.   Heckard had, no doubt, entered into other arrangements upon the strength of this contract, and if money was hard to get, Sayre should have been more diligent in order that Heckard should be put to no inconvenience on account of his own default. Money was not to be had for the simple asking, hence the greater reason why Heckard should insist upon prompt pay.

There is some evidence going to show a demand for the money previous to the time of tender, for in that conversation Heckard expressly charges upon Sayre that he was not ready with the money when he called for it, which Sayre did not deny.

Mr. W. C. Goudy, for the defendant in error, submitted the following points :

The defendant in error filed a bill in chancery against the plaintiff in error, to enforce the specific performance of a contract, and compel the execution of a deed.

10 — 34th Ill.

The contract required the defendant to pay $900, in three installments, the last, of $300, on the 1st September, 1858, and the plaintiff to execute a quit-claim deed when the payments were made. Time was made the essence of the contract, and it was provided "that non-payment of either of said notes, when due, shall be considered an avoidance of this bond, and an absolute forfeiture of the payments that may have been previously made."

The evidence shows that $600 was paid; that possession of the land was given to defendant about the first of April, 1858; that the last installment was not paid on the 1st September, the day it was due, and the deed was not made then or since; that on the 2d or 3d of September the plaintiff, by a collusive arrangement with Meeker, the tenant of the defendant, obtained the possession of the property; that on the 7th September, the defendant tendered to the plaintiff the amount due, and demanded a deed, and the tender and deed were refused.

Some facts are shown to account for the failure of the defendant to pay or tender the money on the day it became due.

The contract was not declared forfeited, nor was a deed executed or tendered by the plaintiff.

It is contended that the contract was, by the expiration of the time of payment, forfeited, and, *ipso facto* became null and void; even more, that the vendor was thereby entitled to the $600 paid, and the land itself.

While the parties must abide by the contract, and clauses of forfeiture have been sustained by courts of equity, yet "the mere lapse of time, with non-performance, does not obliterate the contract, so that neither party has any rights, and is subject to no liability under it, as if it never had been. After the expiration of time, and non-performance, the vendor had a right still to treat the contract as subsisting." Until the vendor avails himself of the clause of forfeiture, the contract remained the same as if no such clause was in the contract. *Mason* v. *Caldwell*, 5 Gilm. 196; *Chrisman* v. *Miller*, 21 Ill. 235.

The only act of Heckard tending to show that he availed himself of the right of forfeiture before the tender, was obtaining possession of the premises. Heckard denies, in his answer, that Sayre ever had possession, denies that Meeker was Sayre's tenant, or that he obtained possession of Meeker by collusion. There is nothing in the contract that entitled the purchaser to the possession before payment and conveyance. The idea of coercing the payment of the money by procuring the possession, was as consistent with the act of Heckard, even if it was as claimed by Sayre, as a forfeiture of the contract, and far more consistent with equity and fair dealing. The vendor still retained the note; or, indeed, there is nothing to show that he had not assigned it. There has never been any offer to return it.

Heckard cannot retain the note or collect the money, and avail himself of the forfeiture to obtain the land. *Chrisman* v. *Miller*, 11 Ill. 236.

The vendor having failed to terminate the contract by some positive and affirmative act after the time for the last payment had expired, it was still in force on the 7th September, 1858, when the purchaser tendered the amount due, and demanded a deed. It was too late then to claim the contract as terminated.

The payment of the last installment by the purchaser, and the conveyance by the vendor, were mutual and concurrent acts. Neither was a condition precedent to the other. Neither party can compel a performance by the other, or take advantage of the other without first performing or offering to perform on his part. *Duncan* v. *Charles*, 4 Scam. 568; *Bank Columbia* v. *Hayman*, 1 Peters, 455; *Andrews* v. *Sullivan*, 2 Gilm. 330; *Hungate* v. *Rankin*, 10 Ill. 641.

Every question arising in this case has already been decided by this court in *Bishop* v. *Newton et al.*, 20 Ill. 177.

In that case, Newton sold to Bishop several tracts of land for $12,000; Bishop paid $1,000, and agreed to pay $2,000 more on the 1st day of January thereafter, and to assume a mortgage for $9,000 except the interest. Newton agreed to execute a deed free from incumbrance, &c., on the payment of

the $2,000. In case Bishop failed to pay by the 15th day of January, he was to forfeit all payments made and all rights under the agreement. Bishop failed to pay on the day, and on the 5th February, Newton, without having paid the interest on the mortgage, so as to convey a good title subject only to the principal secured by the mortgage, or having tendered a deed to Bishop, sold the land to other persons. On the same day Bishop offered to pay the $2,000, but Newton told him he was too late.

The court decided two questions, namely: *First.* That Newton had not the right to insist on the forfeiture while he was in default in the payment of the interest and the execution of a deed. *Second.* That the offer to perform, twenty days after the time for payment by Bishop, and before Newton was in a condition to claim a forfeiture, entitled Bishop to a specific performance of the contract.

In the case at bar, it was the duty of Heckard to execute and tender a deed on the first day of September, 1858, as well as the duty of Sayre to pay the last installment on that day. Heckard could not compel the payment without first tendering the deed. He could not avail himself of the clause of forfeiture until he had first made and tendered the deed. This he did not do, and within seven days Sayre tendered the sum due, and demanded the deed. Heckard refused the tender, and refused to convey.

The bill was filed to compel the conveyance, and the court below, on a final hearing, on the authority of *Bishop* v. *Newton*, 20 Ill., rendered the decree.

There is no reason of justice or morals that will permit a reversal of the decree.

Mr. Justice BECKWITH delivered the opinion of the Court:

This is a suit in equity to enforce the specific performance of a contract for the sale of a tract of land in Fulton county.

On the 18th day of September, 1857, the plaintiff in error bargained with the defendant in error, to sell him the land for the sum of $900. One hundred and five $\frac{99}{100}$ dollars were then

paid, and two notes were given for the residue; one for $494 $\frac{11}{100}$ payable on or before Oct. 25, 1857, and the other for $300, payable on or before Sept. 1, 1858.

The contract between the parties provided, that the above notes should be paid at maturity; that the time stipulated for their payment should be regarded as of the essence of the contract; and that the non-payment of either of the notes when they should become due, should be considered as an avoidance of the vendor's obligation, and as an absolute forfeiture of all payments previously made. The note maturing first was paid at maturity, and a tender of the amount due upon the other note was made on the 7th day of Sept., 1858, six days after it fell due.

The bill alleges a waiver by the vendor of the prompt performance of the agreement; and sets up as an excuse for the vendee's neglect to make the last payment at the time required, that he was engaged in the discharge of his official duties as clerk of the circuit court of Fulton county.

There is no evidence of any waiver by the vendor of the stipulation in regard to time, and we think the excuse alleged is entirely insufficient. The term of the court at which the defendant in error was required to attend, commenced on the 6th day of July, 1858, and he might have employed some one to transact his business with the plaintiff in error, if it was not convenient to attend to it in person. Such an excuse, if allowed, would exempt the clerks of many courts in this State from ever discharging their obligations.

From the allegations of the bill it appears, that the complainant did not have the money to make the last payment at the time it became due; and stipulations like the one in the contract under consideration, would be of little value if they were to be enforced only in cases where parties making them had the money with which they might be discharged. No rule is more firmly settled than that parties may make time of the essence of a contract. In this case the parties have so made it, in plain and unambiguous language.

At law the defendant in error has no remedy for a breach of the agreement by reason of his own non-performance. He

was not hindered or prevented in the discharge of his obligations by any fraud, accident or mistake; and under such circumstances equity must follow the law. A court of equity has no more right than a court of law to dispense with an express stipulation of parties in regard to time, in contracts of this nature, where no fraud, accident or mistake has intervened. To relieve from the effect of such stipulations, except on the grounds named, would practically deny the right of parties to make them. Such relief would result in great injustice to vendors. Usually the price of lands in this country is fixed with reference to prompt payment; and where they are an article of commerce, it is often of the last importance to a vendor to receive his money promptly. We have all known men of affluence reduced to penury by neglect in making such payments as they became due. A vendor may require the payments to be made promptly to enable him to meet his own engagements; and for that purpose a stipulation may be inserted in the contract that time shall be of its essence. If courts were to allow a vendee to neglect to make his payments at the stipulated times, where he is not hindered or prevented from so doing by fraud, accident or mistake, the consequences of his negligence would be visited upon his vendor. Justice does not require relief from the result of one's own negligence. Courts of equity in such cases refuse to interfere; and leave the parties to their remedies at law, if any they have, for the reason that there is no equity requiring such an interposition.

It was urged in argument that the plaintiff in error might compel the payment of the note of the defendant in error, but if he should do so, an equitable right to a conveyance of the land would then exist which, upon proper application, would be enforced. Equity would not allow the plaintiff in error to collect the residue of the purchase-money and hold the land, but until he attempts its collection no such equity arises.

The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*