## PRINCE v. GRIFFIN *et al.*

Contract: TIME THE ESSENCE OF: VENDOR AND VENDEE. It is competent for parties in an agreement for the sale of real estate to make time of performance the essence of the contract, and to provide for a forfeiture of all rights in the event of a failure on the part of the vendee to perform as stipulated. This rule is exemplified under the facts of the present case, which, together with the terms of the contract, of which time was held to be the essence, are fully stated.

*Appeal from Dubuque District Court.*

FRIDAY, OCTOBER 8.

THIS was originally a proceeding in ejectment, commenced in May, 1863. In September, 1867, plaintiff substituted a bill in equity for her petition at law, asking that defendant Griffin, the holder of the legal title, be required to specifically perform a certain contract for the conveyance of the lot in controversy, made by one Mc-Daniel with the defendant Margaret H. Jackson.

The undisputed facts, as derived from the pleadings, and an immense mass of documentary evidence, are these:

McDaniel, in September, 1858, was the owner of the lot, and then entered into an agreement with L. H. Jackson to convey the same to his wife, M. H. Jackson, upon the payment of five promissory notes given therefor; one

for $200, due presently; one for $500, due November 15, 1858; one for $200, due September 8, 1859; one for $200, September 8, 1860; and another for $400, September 8, 1861. The purchaser was to pay the taxes. If the notes were not paid as they respectively matured, or if the taxes were not met and discharged as agreed, "the obligation was to be void at the option of said McD., and all or any payments which may have been made  *  *  * and all or any rights which may accrue to the said Jacksons by virtue hereof shall be forfeited to said McD., as well as all improvements made thereon of every description  *  *  *  after sixty days' notice of such forfeiture being given,  *  *  *  *  it being expressly understood and agreed that said Jacksons are not to claim or have any benefit or right as occupying claimants, as provided in chapter 80 of the Code of Iowa  *  *  but upon failure to pay as aforesaid, they are to forfeit all right, title and interest in said lot, and all improvements made thereon, to said McDaniel absolutely forever."

And it was further agreed that, upon failure to pay as aforesaid, the said Jacksons "shall be held and may be treated as a lessee holding over after the termination of his lease, and therefore subject to the existing summary remedy for forcible entry and detainer, as provided in sections, etc., of the Code, etc."

The notes maturing prior to September, 1860, were met. This one (for $200, due Sept. 8, 1860) remaining unpaid, the obligor, on the 14th of that month, in writing, because of this failure, notified said L. W. Jackson, that if said note was not paid within sixty days he would declare and consider said agreement void, all payments and improvements forfeited, and should proceed to take possession of said lots, improvements, etc.

When the lot was purchased it was unimproved. Prior to the alleged forfeiture Jackson erected a dwell-

ing-house thereon, which was used and occupied as·a homestead.

Payment not being made as required by the agreement and the written notice of the 16th of September, McDaniel, on the 14th of December, 1860, conveyed the property to one Wheeler, who at once entered into the possession, holding the same until September 19, 1862, when he conveyed to defendant Griffin, who has since continued to hold and occupy the same as his own property.

The Jacksons were unable to pay; Wheeler took possession with their knowledge; to it they made no objection, and he paid, as did Griffin, a valuable consideration for the property.

Plaintiff's claim is this: The agreement of McDaniel to convey was recorded Oct. 10, 1858; on the 10th of May, 1859, it was assigned to Seeley, and by Seeley to plaintiff's husband, June 9, 1859. The husband made an assignment of the same instrument in due form to plaintiff, after the commencement of this suit. It is claimed that the assignment to Seeley was in trust to secure a debt from Jackson to the husband of plaintiff. September 16, 1859, Jackson and wife made a mortgage upon the lot to said Prince, the husband, to secure the sum of $2,000, the same being, as is alleged, as a further security for the indebtedness, secured by the assignment to Seeley. This mortgage was duly recorded (Sept. 15, 1859). The debt thus secured not being paid, proceedings to foreclose were instituted, McDaniel and Jackson and wife being made parties, and, as is claimed, duly served with notice. A foreclosure was ordered, a special execution levied, and the property sold thereunder to plaintiff. The judgment of foreclosure was rendered February 6, 1861, the sale took place March 14, 1862, and the sheriff's deed was filed for record, July, 1862.

Prince v. Griffin.

The other material facts, as well those admitted as those controverted, will be found referred to in the opinion.

Plaintiff's bill was dismissed, and she appeals.

*Wm. Mills* and *W. J. Knight* for the appellant.

*Shiras & Van Duzee* and *John Doud*, Jr., for the appellee.

HARVARD LAW SCHOOL LIBRARY

WRIGHT, J. — This controversy is between plaintiff and defendant Griffin, who holds under McDaniel. Mrs.

CONTRACT: time the essence of: vendor and vendee.

Jackson (her husband, L. W., is dead) makes no claim to the property as against McDaniel and his grantees, but does resist plaintiff's right to a specific performance. She and the other defendants deny any indebtedness to Prince from the husband (Jackson); insist that the assignment of the agreement to convey was obtained without consideration, by fraud, etc., and that the same is true of the mortgage. It is also claimed that the judgment of foreclosure was obtained without notice to either McDaniel or the Jacksons, and that the title derived thereunder is void as to them. Another position is, that this was the homestead of the Jacksons; that the wife never consented to the assignment of the contract to convey; that though the *husband* may have had notice of the foreclosure proceedings, *she* never had, and that plaintiff's title is therefore void and without equity. In addition to all these claims, defendant further insists that he holds the property under a valid tax title — for the delinquent taxes of 1857 and 1858 — the sale being made in July, 1862, and the deed executed in February, 1867. As to this, plaintiff says that Wheeler bought at the tax sale after his purchase from McDaniel — while he held the title and was in possession — when he was bound to pay said taxes, and, as a consequence, neither he, nor any one claiming under him,

could acquire any additional strength of title by such tax purchase. But, more than all, defendant insists that time was the essence of the contract between McDaniel and Jackson; that this contract was forfeited by the failure of the vendee to comply with its terms, and was at an end in the fall of 1860; that this is true as to Jackson and wife, and that plaintiffs are, and can be, in no better position. And upon this proposition the case is made, for the most part, to hinge. As to the law, there is no controversy. And as, upon the facts, we are of the opinion that this point is with defendants, we need not consider the other propositions above referred to, and relied upon with more or less confidence, by counsel; for, of course, if this is ruled against appellant, we have nothing to do with the tax title, the validity of the foreclosure judgment, the circumstances attending and leading to the assignment of the contract, nor with various other matters which would only become important if this cardinal and leading question were ruled the other way. Briefly, then, we turn to this question of forfeiture. As shown by the statement, this is a proceeding to enforce the specific performance of the contract made in September, 1858, by McDaniel with L. W. Jackson. This contract, though ever so stringent, is plain and unambiguous in its terms. There is no suggestion of fraud in obtaining the same, nor is there any intimation that it does not contain the exact agreement of the parties. Their rights, and the rights of those holding under them, must therefore be determined "by what is written," by the contract thus made, and not by what we would write, nor by a contract they might have made. That, by the express terms of this contract, time is the essence of it, no one can doubt, let the reading be casual or careful. The language in reference to the payment of taxes, the payment of all and each of the installments, the forfeiture of the payments

made, and of improvements upon, the premises, the rights of the vendee as occupying claimant, the forfeiture of all right, title and interest in and to the lot, the right of the vendor to treat the purchaser as a lessee holding over, and to resort to the summary remedy of forcible entry, etc., we say all this language is next to meaningless if time is not, and was not, intended to be the essence of this contract. And that it is competent for parties to incorporate this element into their contracts is too well settled, and by too many decisions in this and other States, to be now denied. The proposition is not controverted by appellant, and therefore needs no support. But see *Armstrong* v. *Pierson*, 5 Iowa, 317; *Davis* v. *Stevens*, 3 id. 158; *Young* v. *Daniels*, 2 id. 129; *Tomlinson* v. *Smith*, id. 39; *Usher* v. *Livermore*, id. 119; *Garretson* v. *Vanloon*, 3 Gr. 128.

This was the contract. Then follows the acts of the parties, based upon and giving a construction to it. What could be done to more unmistakably insist upon and declare the forfeiture, could hardly be imagined. There was a failure to pay. This is not denied. The vendor says, in writing: "If this payment is not made at the expiration of sixty days, I will declare and consider the agreement void." In this he followed the very substance of the contract. When the sixty days expired, he sold the property, his vendee took possession — it was voluntarily surrendered. This possession has continued adverse to plaintiff, and in the party claiming under McDaniel — and who insists upon such forfeiture. To this day, neither Jackson nor wife have offered to pay another farthing upon the property, nor have they denied the sufficiency of the notice, nor the absolute right of defendant to the property — the wife, who survives, is not here now, denying this right. And while she denies

plaintiff's right, she is not, as far as we can see, in collusion with defendant.

It is true the Jacksons put some improvements upon the lot, and if there had been no forfeiture, and time had not been made the essence of the contract, plaintiff would, because of such improvements, stand in a much better position in a court of equity. In *Laverty* v. *Hall's Admx.* (19 Iowa, 526), there was no forfeiture shown, nor was the contract there like the one before us as to time, and hence we could not say, in that case, as *matter of law*, that plaintiff had so slept upon his rights as to deprive him of relief. Here the facts are very different, indeed we may say that no case has been brought to our attention — nor do we believe any can be produced — where, under such a contract as the one before us, and upon the same facts of diligence in declaring and claiming the forfeiture, negligence on the part of the vendee, acquiescence in right asserted by the vendor for months and years, a court of equity has granted relief or ordered a conveyance. We shall not be the first to establish a precedent. The other circumstances should be very peculiar indeed, and the equities of a petitioner most persuasive, to warrant the order for a specific performance when such facts are shown. These are not found in the present instance.

It is hardly necessary to add that plaintiff is in no better position than would Jackson or his wife be, if insisting upon this relief. She holds by an assignment of, and under a mortgage which was upon an equity, and of which McD., nor those holding under him, had any actual notice. Her rights were dependent upon the action or negligence of her vendor or mortgagor (and the vendee of McD.). Of course this would not exclude the idea of diligence on her part, and rights consequent thereon. Nor would it apply if it appeared that McDaniel and the

Jacksons were combining, or had combined, to cut off or deprive her of her rights under the assignment or mortgage. As already suggested, this is not shown. And, least of all, is there any evidence that defendant (Griffin) or his grantor (Wheeler) were parties to any such possible fraud? As the case stands, plaintiff can only claim to take the Jackson contract. She bought the property after the forfeiture, after the sale to Wheeler, after the possession had been surrendered, after failure to make payment of the purchase-money, or to pay the taxes, *and seven years* afterward asks equitable relief.

In the law action commenced in 1863, plaintiff counted, of course, upon a *legal* title, and made no claim to enforce this contract. In 1867 (in September), she first asks a specific performance. The first answer filed to this petition (and no answer prior to this is in the record) sets up the forfeiture. McDaniel was afterward made a party, and he in like manner, and promptly, insists that the contract was forfeited in Nov. 1860; so that there was not only negligence on the part of plaintiff in asserting his rights, but entire diligence on defendant's part in asserting the forfeiture.

We only remark, in conclusion, that, as we construe the contract, the right to declare the forfeiture arises upon a failure to pay *either of the notes*. And, further, that while *forfeitures* are not favored, either in law or equity, it is equally true that neither law nor equity favors the negligent, nor do they hold out a premium to the careless, or one who shows any thing else than a prompt and ready disposition to comply with his undertaking. And this is especially so when the rights of third persons have intervened and new obligations been imposed (as in this case the liability of McDaniel and Wheeler upon the warranty in the deeds), by reason of a change in the condition of the parties.　　　　　　　Affirmed.