REALTY SECURITIES CORPORATION, A CORPORATION, *Appellant*, v. J. W. L. JOHNSON, *Appellee*.

En Banc.

Opinion Filed January 18, 1927.

1. Where time is of the essence of a contract for the sale and conveyance of land and such contract provides that it may be forfeited and terminated at the *option of the vendor* when payments are not made at the times agreed on, if default be made the vendor desiring to exercise such option must, as a general rule, in order to forfeit and terminate the contract, give reasonable notice to the vendee of his intention in that regard, and that he will insist on payment as provided in the contract by a future date, fixing a reasonable time within which the vendee may have an opportunity to comply.

2. If, after several defaults on the part of the vendee the vendor attempts to give notice of the character stated in the preceding headnote, but is prevented from so doing by the removal of the vendee without leaving information as to his future address, and without making any provision for carrying out the contract, the vendee will be deemed to have abandoned the contract, and the vendor may then declare and treat the contract as forfeited and terminated in accordance with its terms, and may take proper steps in equity to obtain the removal of the cloud upon his title by the cancellation of the public record of such contract.

3. Parties have the right to make time of the essence of a contract if they so desire, and if it clearly and unequivocally appears from the contract, by means of some express stipulation, that time shall be essential, this expressed intention of the parties will be recognized in equity as well as at law.

An Appeal from the Circuit Court for Dade County; H. F. Atkinson, Judge.

Reversed and remanded.

*Paul C. Taylor,* for Appellant;

*Evans & Mershon,* for Appellee.

## STATEMENT.

BROWN, J.—The purpose of the bill as amended in this cause was to obtain a decree declaring a certain contract for deed and the assignment thereof a cloud upon the title of the complainant, appellant here, and removing said cloud, and ordering the Clerk of the Court to enter on the margin of the record of said contract for deed an appropriate notation showing that the same had been cancelled and ordered removed from the records by virtue of such order. There was also a prayer that the Court perpetually enjoin the defendant from making any claim to the property under said agreement for deed; also a prayer for general relief. This bill as amended was demurred to by the defendant on the ground that the same was without equity. The Chancellor sustained the demurrer and dismissed the bill at the cost of complainant; from which order this appeal was taken.

The facts alleged in the bill are as follows. The complainant was the owner in fee simple of two described lots of land in Kinkland Heights which it sold to a Mrs. Fowler. On May 25, 1920, complainant executed and delivered to Mrs. Fowler a contract or agreement for deed wherein complainant agreed to convey to Mrs. Fowler the said two lots for $475.00, $20.00 being paid in cash, and the remainder to be paid at the rate of $10.00 per month until the contract was fully paid. On October 4, 1921, Mrs. Fowler assigned said contract, which had been duly recorded in the public records, to defendant Johnson. The contract contained the following provision: ''And in case of the failure of the said party of the second part to make.

either of the payments or any part thereof or to perform any of the covenants on her part hereby made and entered into, this contract shall at the option of the party of the first part be forfeited and terminated, and the party of the second part shall forfeit all payments made by her on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and liquidation of all damages by it sustained. And the said party of the first part shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action therefor.

"It is mutually agreed however, by and between the parties hereto, that the time of payment shall be an essential part of this contract and that the covenants and agreements herein contained shall extend to and be obligatory upon the successors, heirs, executors, administrators and assigns of the respective parties."

Up to December 10, 1921, complainant had received payments aggregating $190.00, and on that date the defendant secured a deed from the complainant for one of said lots, leaving a balance due on the contract of $285.00. The lots were of equal value, so that defendant received from complainant property of more value than the sum which had been paid to the complainant. This transaction left a balance of $285.00 due on the contract covering the remaining lot. No further payment was made by the defendant until January 28, 1922, when $5.00 was paid, and on January 30, 1922, $10.00 was paid. No further payments were made by the defendant. On June 29, 1922, complainant sent a letter to the defendant at his last known address, 923 Northwest First Avenue, in the City of Miami, calling his attention to the fact that no payment had been made on said property since January 30, 1922. This letter was returned by the Postal authorities with a notation to the

effect that it was unclaimed. This being the only address known to complainant, and not hearing from the defendant nor receiving any further payments from him, complainant on August 25, 1922, addressed a letter to the defendant, sending the same by registered mail, notifying him that unless within thirty days from the date of said letter the payments in default were made, that complainant would exercise the option contained in said contract and cancel the same. This letter was also returned by the Postal authorities with a similar notation, to the effect that the same was unclaimed.

The amended bill alleges that to the best of complainant's information and belief the defendant after January 30, 1922, removed himself from the City of Miami, Florida; that he did not leave with complainant any address whatsoever, and that complainant could not know and could not have known by reasonable diligence the address of the defendant so as to serve him personally with notice to make the payments called for by the agreement, and that complainant had no means of serving the defendant personally with notice except as above set forth. That on account of defendant's failing to make the payments as called for by the contract and said notice, complainant exercised its option and declared the contract forfeited and terminated. Complainant in said bill tenders to the defendant the sum of $15.00 paid by him on account of the remaining lot covered by the contract, and alleges its readiness to pay said sum to the defendant, the contract having been cancelled by the complainant. It is further alleged that the defendant, by recording the agreement for deed, caused a cloud to be cast upon the title of complainant to said land, which complainant desired to have removed and his title quieted. The bill further alleges that the defendant had never taken possession of the said property and that the

same was unimproved and unoccupied land. The bill closed with the prayer for removal of cloud hereinabove mentioned. The amended bill was filed on Februry 22, 1924, and alleged that the defendant was then a resident of Miami, Dade County, Florida. A demurrer was filed by the defendant, which demurrer was sustained, as above stated.

BROWN, J., (after stating the facts as above.)

This is a bill, not for the rescission, or forfeiture, or cancellation of an existing contract, but for the removal of a cloud resulting from the recordation of a contract which the complainant alleges had previously been terminated by it in accordance with the terms of such contract. While the allegations of the amended bill are not as full and specific as they might be, this is a fair interpretation of the meaning and effect of its averments.

Equitable jurisdiction to remove clouds from title is granted on the principle *quia timet*: that is, that the deed or other instrument or proceeding constituting the cloud may be used to injuriously or vexatiously embarrass or effect plaintiff's title. Pomeroy's Eq. Juris., 4th Ed. Vol. 4, secs. 1398, 1399; Vol. 5, secs. 2146, 2147. Under sec. 3213, Revised General Statutes, 1920, as amended by Chapter 10,223, Laws of 1925, as well as under Chapter 11,383, of the Extra Session Laws of 1925, it is no longer essential to the jurisdiction that the complainant be in actual possession of the land from the title to which it is desired to remove the cloud.

Instruments and proceedings of every conceivable nature have been removed as clouds on title, among them land contracts. Pomeroy's Eq. Juris., secs. 1399 and 2149, and numerous cases cited; Sea v. Morehouse, 79 Ill. 216; Lar-

mon v. Jordan, 56 Ill. 204; Taylor v. Rawlins, 86 Fla. 279, 97 So. 714, and 106 So. 424.

The amount involved in this case is not large, but it involves some important principles. As was said in Glock v. Howard, 123 Cal. 1, 55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199: "Land is one of the very highest forms of property. Contracts for its sale are required to be solemnly evidenced by signed writings. The value of such sales amount to untold millions of dollars annually. It becomes a matter of the utmost consequence, then, that the reciprocal rights and duties of vendors and vendees under the conditions and covenants usually found in such contracts— conditions and covenants in such general use that their employment may be said to be universal—should be clearly defined and understood." This would appear to warrant a somewhat extended examination of the questions here presented.

In such a case, as the one at bar, it is said that the vendor, in forfeiting or putting an end to the contract in accordance with its terms, acts *in affirmance* of the contract and not in *rescission* of it, by enforcing a remedy expressly reserved in the contract itself. 27. R. C. L. 625, 664; Hansbrough v. Peck, (U. S.) 5th Wallace 497, 18 L. Ed. 520; Snider v. Lehnherr, 5 Ore. 385; Suburban Homes Co. v. North, 50 Mont. 108, 145 Pac. 2; Ann. Cases, 1917C, 81.

In ordinary cases, equity does not consider time as of the essence of a contract. But where from the nature of the subject matter, or fluctuations in its value, or from the terms of the agreement, the treating of time as a nonessential will produce a hardship, and delay by one party in completing or in complying with a term would necessarily subject the other party to serious injury or loss, time will be held essential. "It may be said, however, that there is no universal or general rule, and each case must in

a large measure be judged by its own circumstances. A party may not trifle with his contracts and still ask the aid of a court of equity; neither will the law be administered in a spirit of technicality and so as to defeat the ends of justice. The principle deducible from the reported cases seems to be that time, in the performance of an agreement either for the sale or purchase of real property, is always material; and a court of equity will not, any more than a court of law, excuse laches and gross negligence in the assertion of a right to a specific performance. On the other hand, time is not of the essence of the contract unless made so by its terms; and, although there may not, when time has not been made essential, be performance at the day, yet, if the delay is excused, and the situation of the parties or of the party is reasonably vigilant, equity will relieve him from the consequences of the delay and grant a specific performance.'' Warvelle on Vendors, sec. 744, p. 881. It is now thoroughly established that parties have the right to make time of the essence of the contract if they so desire, and if it clearly and unequivocally appears from the contract, by means of *some express stipulation*, that time shall be essential, this expressed intention of the parties will be recognized in equity as well as at law, and the time of completion, or of performance, or of complying with the terms, will be regarded as of the essence of the contract. 27 R. C. L. 446; Pemeroy's Eq. Juris., secs. 455, 2233; Pomeroy's Spec. Perf., 3rd Ed., 382 to 390, inclusive, and cases cited; Warvelle on Vendors, sec. 839; Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756; Tate v. Pensacola, etc. Co., 37 Fla. 439, 20 So. 542; Forssell v. Carter, 65 Fla. 512, 62 So. 926; Elliott on Contracts, sec. 1558; Kimball v. Tooke, 70 Ill. 553; Cleary v. Folger, 84 Cal. 316; Ewing v. Crouse, 6 Ind. 312; Snider v. Lehnherr, 5 Ore. 385; Grigg v. Landis, 21 N. J. Eq. Rep. 494; Prince v. Griffin, 27 Iowa

514; Glock v. Howard and Wilson Colony Co., 123 Cal.
1; Heckard v. Sayre, 34 Ill. 142; 39 Cyc. 1376, 1381-82; 38
Cyc. 1367, 1369; 1som v. Johnson, 205 Ala. 157, 87 So. 543.
It is clearly manifest, therefore, that time was of the
essence of the contract set forth in the amended bill.

While it has been held that no notice of forfeiture or
termination of the contract is necessary where the contract
expressly so provides, or declares in unequivocal terms that
failure to make payments at the time agreed shall *ipso facto*
work a forfeiture of the cntract (39 Cyc. 1384, and cases
cited; and Gilbert v. Union Pac. Ry. Co., 79 Nebr. 160;
Prairie Development Co. v. Leiberg, 15 Idaho 379), it is
generally held that when by the terms of the contract the
vendor is merely given the *option* to forfeit, terminate or
rescind the contract on default of the purchaser in per-
formance, notice of such intent must be given to the pur-
chaser before the vendor can actually forfeit and terminate
the contract.   39 Cyc. 1383-4; Pomeroy's Spec. Perf., sec.
393.   Our own jurisdiction is committed to the latter rule.
Thus, in Acosta v. Anderson, 56 Fla. 749, 48 So. 260, it was
held that when by the contract the right to declare a for-
feiture is optional with the vendor upon default by the
vendee, the former must indicate his election to forfeit the
contract, or it will be considered as still in force unless the
vendee has waived notice of forfeiture. In Chabot v. Win-
ter Park Co., 34 Fla. 258, 15 So. 756, 43 Am. St. Rep. 192,
this Court held that even where time may not be the essence
of the original contract, and one party neglects to perform
the same, and the time for performance has passed, "the
other party may, by giving notice, fix a reasonable time for
the performance of the contract, and has the right to treat
the contract abandoned if not complied with in such limited
time." And in Forssell v. Carter, 65 Fla. 512, 62 So. 926,
it was held that under a contract containing the identical

provisions quoted in the amended bill in this case, the vendor must, in order to terminate and forfeit the contract for default in payment, give reasonable notice to the vendee that he will insist on payment as provided in the contract and that if he (the vendee) fails to make payments on or before the date so fixed for payment, the contract will be forfeited, and in such notice the vendor must fix a future time and give reasonable notice to the vendee in order that he may have an opportunity to comply. Although this contract does not expressly require the giving of such notice, the above stated rule is a reasonable and just one, and must generally be complied with before the vendor will be permitted to exercise his option to forfeit and terminate the contract. In Sec, 393 of Pomeroy's Specific Perf., it is said: ''A formal notice by the vendor may not, perhaps, be always necessary, for it is declared in some decisions, that any act of the vendor, of which the purchaser is, or must, in the nature of things, be informed—showing clearly and unequivocally that the vendor has elected to rescind the agreement, or to treat it as at an end—will operate the same as and take the place of a notice of such intention to the vendee; but the act, in order to produce this effect, must be wholly inconsistent with a continuance of the contract.'' Appellee contends that compliance with this rule requires the actual giving and receipt of such notice, in every case and at all events, and that failure to show such actual notice in this case robs the bill of all equity. Appellant, on the other hand, contends that the rule is not applicable to the facts of this case, or, if it is, that the complainant did all that it could to comply therewith and that the defendant vendee is not in a position, under the facts alleged in the bill, to make any objection on the ground of failure to strictly comply with such rule by the giving of actual notice, the giving of which he him-

self had made impossible; and further, that defendant cannot insist upon strict compliance with a contract which he had abandoned.

In the case of Forssell v. Carter, *supra,* there can be no question that the rule was fairly and justly applied. Forssell had executed and delivered to Sanders a contract for the sale and conveyance of a lot of land in Dade County, Florida, for $175.00. Of this $75.00 was paid, leaving a balance of $100.00 to be paid on or before June 15, 1911, with interest; this contract was assigned on May 29, 1911, to A. T. Carter. On July 1, 1911, Carter notified Forssell that he was ready to take a deed to the property and offered to pay the balance due on the contract. At that time, the payment was only fifteen days past due, owing to a mistaken impression by Carter as to the date of payment. Carter had neither abandoned the contract, nor made willful default, nor removed from Miami without leaving any notice as to his future address. And no attempt had been made by Forssell to give notice to Carter of intent to forfeit or terminate the contract when Carter offered to pay the full balance due.

In the instant case, the purchaser had secured a deed to one lot before paying for its full value and had only paid $15.00 upon the remaining lot covered by the contract. There then remained due a balance of $270.00 of principal. Although the payments were due at the rate of $10.00 monthly, no further payment was made by him from January 30, 1922, to August 25, 1922, on which date the complainant addressed a letter to the defendant, to his last known address in the City of Miami, notifying him that unless within thirty days from the date of said letter the payments in default were made, complainant would exercise the option contained in the contract and cancel the same. This letter was returned unclaimed, the defendant

having removed himself from the City of Miami. The complainant heard nothing further from the defendant, and exercised its option and declared the contract forfeited and terminated. The bill alleges that defendant did not leave with complainant any address whatsoever and that the complainant could not, by reasonable diligence, know the address of the defendant so as to serve him with the notice. That no further payments were made by the defendant after said payment of January 30, 1922. The amended bill was filed in February, 1924.

It is unquestionably the law that a vendee may waive the right to such a notice. 39 Cyc. 1387. Nor is any notice necessary where the vendee has actually abandoned the contract, or has so acted as to create a reasonable belief on the part of the vendor that the vendee has abandoned the contract and by removal to another State has put it out of the power of the vendor to give notice. 39 Cyc. 1384; Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88; Dunlap v. Green, 60 Fed. 242, 8 C. C. A. 600; Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843. "A party who has by his own act prevented literal compliance with the terms of the contract cannot insist thereon." 13 C. J. 608. "If one party to the contract renders performance impossible, the opposite party may, at his election, rescind it. Where non-performance by one party disables the other from performance on his part, such performance is excused and the party may at his option treat the contract as rescinded." 13 C. J. 614, and cases cited. "Where one party to a contract abandons it and refuses further performance the other party is entitled to rescind." 13 C. J. 615. We are therefore of the opinion that the defendant in this case has no right to complain of a failure on the part of the complainant to effect actual service of the notice upon him, as, from the facts alleged in the bill, unexplained, the defend-

ant abandoned the contract, and had by his own action and conduct made it impracticable, if not impossible, for such notice to be given him. In consequence, under the facts alleged in the bill, the complainant had the right to declare the contract terminated and forfeited, and to so treat it.

This holding is supported by the rules generally recognized as applicable when a *vendee* in default *takes the initiative* and seeks either a specific performance of the contract by the vendor, or a recovery of the partial payments made by him. In Warvelle on Vendors, Sec. 839, it is said: "So, too, where there has been no express notice of rescission, yet where an application has been made for a specific performance, and the party so applying has omitted to execute his part of the contract by the appointed time, and is unable to assign any justification therefor, and there is nothing in the acts or conduct of the other party that amounts to an acquiescence in such delay, specific performance will be denied." In Sec. 455 of Pomeroy's Eq. Juris., it is said: "It is well settled that where the parties have so stipulated as to make the time of payment of the essence of the contract, within the view of equity as well as of law, a court of equity cannot relieve a vendee who has made default. * * * It is also equally certain that when the contract is made to depend upon a condition precedent,—in other words, when no right shall vest until certain acts shall have been done, as, for example, until the vendee has paid certain sums at certain specified times,—then, also, a court of equity will not relieve the vendee against the forfeiture incurred by a breach of such condition precedent." See also Pomeroy's Specific Performance, Secs. 392, 393, 401; Warvelle on Vendors, Secs. 738, 746. In 27 R. C. L., Sec. 379, p. 625, it is said: "In most jurisdictions, however, the view is taken that if the purchaser makes default in the stipulated payments, the vendor may refuse to perform further

on his part without incurring liability at law to refund to the purchaser any part of the purchase money theretofore paid. This is especially true where the terms of the contract authorize the vendor to declare a forfeiture of the purchaser's rights on the latter's default in payments, and the vendor in so doing acts fairly and within the scope of the power, or provide that the vendor may retain the deposit or part payment as a forfeiture in the nature of liquidated damages for the failure of the purchaser to complete the contract. In such a case it is said that the vendor in putting an end to the contract acts in its affirmance and not in rescission of it, by enforcing a remedy expressly reserved.'' To the same effect, see 39 Cyc. 1381, 1382. In Hansbrough v. Peck, *supra*, the Supreme Court of the United States said: ''No rule in respect to the contract is better settled than this, that the party who has advanced money or done an act in part performance of the agreement, and then stops and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.'' To like effect, see 29 Am. & Eng. Encyc. Law., 683-4, 726-7; Glock v. Howard, 123 Cal. 1, explaining and limiting Drew v. Pedlar, 87 Cal. 443; Heckard v. Sayre, 34 Ill. 142; McLeod v. Sharp, 53 Ill. App. 406; Kimball v. Tooke, 70 Ill. 553; Jennings v. Dexter, 43 Wash. 301; Howe v. Smith, 27 Law Rep., Chancery Div., 89; Suburban Homes Co. v. North, 145 Pac. 2, Ann. Cases 1917C, 81; Warvelle on Vendors, Secs. 746, 807. In Prince v. Griffin, 27 Iowa 514, it was said: ''While forfeitures are not favored, either in law or in equity, it is equally true that neither law nor equity favors the negligent, nor do they hold out a premium to the careless, or one who shows anything else than a prompt and ready disposition to comply with his under-

taking.'' In Heckard v. Sayre, *supra,* it was said: ''At law the defendant in error has no remedy for a breach of the agreement by reason of his own non-performance. He was not hindered or prevented in the discharge of his obligations by any fraud, accident or mistake; and under such circumstances equity must follow the law. A court of equity has no more right than a court of law to dispense with an express stipulation of parties in regard to time, in contracts of this nature, where no fraud, accident or mistake has intervened. To relieve from the effect of such stipulations, except on the grounds named, would practically deny the right of parties to make them. Such relief would result in great injustice to vendors. Usually the price of lands in this country is fixed with reference to prompt payment; and where they are an article of commerce, it is often of vast importance to a vendor to receive his money promptly.

We have all known of men of affluence reduced to penury by neglect in making such payments as they become due. A vendor may require the payments to be made promptly to enable him to meet his own engagements; and for that purpose a stipulation may be inserted in the contract that time shall be of its essence. If courts were to allow a vendee to neglect to make his payments at the stipulated times, where he is not hindered or prevented from so doing by fraud, accident, or mistake, the consequences of his negligence would be visited upon his vendor. Justice does not require relief from the result of one's own negligence. Courts of equity in such cases refuse to interfere; and leave the parties to their remedies at law, if any they have, for the reason that there is no equity requiring such an interposition.''

In Pomeroy on Specific Performance, Sec. 401, it is said: ''In short, if time is essential, the same strict rule prevails in equity as at law, and the party who has stipulated to do an act at a specified time, must do it at that time, or he

loses all his remedial rights in a court of equity as well as
in a court of law. No such circumstances will excuse his
failure and preserve his rights, as will avail to account for
his delay in a case where time is simply material. Nothing
will serve as an excuse, except the same class of events
beyond the reach of human control, which will dispense with
an exact performance of any term of any contract—such
event as an act of God, or perhaps an inevitable accident—
or such events as will furnish a ground in equity for dis-
charging the obligation of all agreements, such as fraud or
substantial mistake, or the default or procurement of the
other party.''

The doctrine of denying relief to a purchaser in default
was applied by this Court, in the case of Chabot v. Winter
Park Co., *supra,* to an effort by the purchaser to recover
the value of permanent improvements erected by him on
the property. It was said in the opinion: ''We find a
large number of cases of specific performance of contracts
for the sale of land wherein the primary relief prayed for,
i. e., specific performance, was denied, and yet compensa-
tion was allowed the complaining vendee for improvements
put upon the land, upon the faith of his contract. In all of
these cases the camplainant was free from fault, and spe-
cific performance was denied by reason of some defect in
the contract, or non-compliance with the statute of frauds.
These adjudications are reiterations of the doctrine every-
where enforced by courts of equity, that the statute of
frauds should not be used as an instrument of fraud. We
have been unable to find any case where compensation was
allowed a vendee where his case failed, not from any tech-
nical defect in the form of his contract, but on account of
his own laches, negligence and disregard of his obligations.
The appellant in this case may suffer some pecuniary loss
from which we might wish to save him, but he is in a pre-

dicament into which he has gotten himself by his own con-
duct, and from which we are powerless to extricate him.''

There is no contention here that the vendor has by his
course of conduct in any way waived strict performance on
the part of the vendee and thus precluded himself from
declaring a forfeiture. Nor do the averments of the bill
appear to afford any ground for such a contention. See
Warvelle on Vendors, Sec. 820. Nor is it contended that
the provision in the contract for forfeiture of partial pay-
ments on default as liquidated damages would under the
facts alleged be considered merely as a penalty which
equity would disregard. This contention could not be sup-
ported in view of the authorities cited, as applied to the
facts alleged. But in certain cases where it clearly appears
that such clause was inserted in a contract as a penalty
pure and simple, it will be dealt with accordingly by a court
of equity. See Pomeroy Spec. Perf., Sec. 391.

As a general rule, the provision giving the vendor the
option to forfeit and terminate the contract upon default
by the vendee, is construed as a privilege conferred upon
the vendor, which he may exercise or not as he sees fit. It
is a provision made for his benefit, and not for the benefit
of the vendee. Warvelle, Sec. 811; 27 R. C. L. 465; 29 Am.
& Eng. Encyc. Law, 683; and cases cited; also Suburban
Homes Co. v. North, *supra*.

If, therefore, time has been properly made of the essence
of the contract, and the vendee has been guilty of unjusti-
fiable and unexplained default in performance as to pay-
ment, he cannot, as a general rule, sue on the contract which
he has breached, either for specific performance in equity
or recovery at law of partial payments. The other party,
when not at fault as to performance on his part, may still
have the right, among others, either to compel specific per-
formance by the defaulting party, or treat the contract as

abandoned and sue for damages for breach of contract, or to forfeit and terminate the contract according to its terms where the contract provides for so doing, or, without taking any positive steps, he may merely let matters stand and withhold further performance on his part.

It thus appears that when the vendee in a contract for deed, where time has been expressly made essential, and containing a forfeiture clause such as the contract here involved embraces, is in default in his payments without waiver and without fault on the vendor's part and without excuse such as equity will recognize as sufficient, and the vendor has exercised his option to terminate the contract as required by the rule laid down in Forssell v. Carter, *supra*, *such vendee cannot, as actor,* obtain specific performance of the contract by the vendor, or the return of the partial payments made by him on the contract. His neglect and failure to perform leaves him without remedy at law or in equity. So far as anything that he can do on his own initiative is concerned, the contract might be considered as terminated and cancelled without any formal court decree declaratory of that fact. Such is the effect of the overwhelming weight of authority in this country. And yet the contract, standing unexplained and uncancelled upon the public records, constitutes a cloud upon the vendor's title which may work serious embarrassment or injury upon him. It would seem in such a state of affairs that the vendee would have no just ground of objection when the vendor becomes the actor and comes into equity for the removal of such cloud. At least, any objection which he may make under such circumstances should be carefully scrutinized. Surely he should not be permitted to take advantage of his own wrong, by complaining of a failure to make actual delivery to him of notice of the intent of the

vendor to terminate the contract when by his own conduct he made such actual delivery of notice impossible.

It would appear from the facts here alleged, that, after he had secured a deed to one-half the property before paying half of the price, and paying only $15.00 more, the vendee abandoned the contract, which he knew contained a forfeiture clause, and left for parts unknown without leaving any address, so that notice could be given, and without making any provision for carrying out his part of the contract. Then a year or so after the attempt to give him notice, he returns, and for some reason, possibly an increase in the market value of the land (see Pomeroy on Spec. Perf., Sec. 407-8), resists the suit to remove the cloud of the recorded contract. Under these circumstances, he is estopped from objecting to the failure of the vendor to perfect actual service of the notice.

It is true, the complainant, at the time of giving, or attempting to give, the notice of intent to forfeit and terminate the contract, did not, with the notice, return, or offer to return, the $15.00 already paid. Neither the case of Forssell v. Carter, *supra*, nor any other of our cases, nor the weight of authority in general, require this. 29 Am. & Eng. Encyc. Law, 682; 39 Cyc. 1382, and cases cited. Such objection would indeed be captious, in view of the fact that the complainant did, in his amended bill, tender and offer to return to the vendee the said partial payment theretofore made.

We conclude, therefore, that there was equity in the amended bill, and that the court below was in error in sustaining the demurrer thereto.

Reversed and remanded.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM AND BUFORD, J. J., concur.