THOMAS, Justice.
The appellees, owners of certain property, filed their bill of complaint against the appellants in which they sought a decree cancelling an option, two assignments of the option, and an agreement which appellants described as a renewal of the option. The appellants answered and, by counterclaim, sought to force the appellees to carry out the agreement to sell to them.
By his decree the chancellor cancelled all the instruments.
The appellees agreed to sell certain lands to the appellant W. T. Cox, trustee for a corporation later to be formed, and an option for the purchase was executed and exchanged for a payment of $1000 in cash. In the instrument it was provided that if title to more than 15% of the lands was not insurable, the sellers were to bring suit to quiet the title within a reasonable length of time, not to exceed one year. The trustee was to bear the expense of the suit but he was granted the privilege of accepting the title in its then condition, by warranty deed, if it developed that the title could not be cleared within the prescribed period.
It was agreed that the option should be effective for a period of six months unless it should be necessary to quiet title in which event the life of the option would be extended for that purpose for a reasonable *65 time but not to exceed one year from its date.
Appellee, W. A. Bellamy, was advised about 19 March 1954 that an examination had disclosed that suit to quiet title was necessary and he replied, in April 1954, that he expected to close the deal and receive the funds within one year of the date of the original option indicating that he took no exception to the tardiness of the notice to him. The option was dated 15 September 1953.
We summarize what we have just written. The .option was to expire 15 March 1954 unless the suit was necessary, a question obviously to be decided by the vendee, and if the suit was found by him to be necessary, the sellers, in effect, granted themselves an enlargement of the time so they could institute and conclude the suit, but restricted themselves to the period that would expire 15 September 1954.
It was provided in a preceding section that if such necessity arose, the sellers would have a reasonable time, not to exceed one year, to “bring” the suit. The provisions of the two sections, read literally, are ambiguous, one being that the suit should be brought within a year, from a date not specified, the other being that the title be quieted, that is that the suit should not only be instituted but terminated before 15 September 1954. It has been seen that the notice of the need of the quiet title suit was given after the original option period had expired but there was no objection on this point and appellants’ contention that the time was extended to 15 September 1954 because of one optionor’s reply that he expected the funds to be paid and the deal closed by that date, is well founded.
On 9 August 1954, but 37 days before the expiration of one year computed from the date of the option, the optionee, W. T. Cox, Trustee, assigned the instrument to Joe Priest, Inc., and on 6 November 1954 the sellers entered into an agreement with that corporation and with Joe Priest and his wife, Maxine Priest, which we will presently analyze.
. Meanwhile the sellers, appellees, did not have the title quieted and so far as we know more than 15% of it is still uninsurable and sum of $1000 still reposes in their pocketbooks.
Now to the agreement which we will dub the Bellamy-Priest contract. It was recognized by the parties that title to the tracts selected in Townships 18 and 19 of Range 16 was ,of such condition that a proceeding to quiet title was imperative and that the suit would “require considerable time.” Under this contract title was to be quieted by the buyers and a “reasonable” time was stipulated for the purpose. There were many provisions about sales and distribution of proceeds. With reference to a consideration for the agreement, it was stated that the parties “each for and in consideration of the premises and the sum of ten dollars, to each in hand paid by the other” entered it.
It was stipulated, too, that all the parties desired to sell immediately all the land in Range 17, and the price per acre, manner of distributing the proceeds and terms of payment were specified.
The impression is first gained that the principal concern of the parties was the great length of time that would be required to make marketable the title to lands in Townships 18 and 19 of Range 16 while tracts in Range 17 could be quickly sold then, later in the contract, there appears the provision that the parties of the second part should, at their expense, quiet title to lands in Range 17 as well as Range 16. although the work of clearing title to lands in 16 was recognized as being “particularly” heavy. We gather from this language that although some of the land in Range 17 could be early sold, the title to the rest would have to be made marketable by litigation. Finally we find a repetition of the *66 commitment that all parties were to cooperate in effectuating speedy sales of the property in this range.
In their bill of complaint, the appellees alleged that they had received no money from the optionee, a statement that is repudiated in their brief filed here, that the optionee had done nothing at all to comply with the obligations placed upon him by the option and that he had clouded the ap-pellees’ title, supposedly by recording the option, so that it had become necessary to file the instant suit. They recognized the kinship between the option and this agreement by alleging that the original option to W. T. Cox, Trustee, “may have been extended or renewed” by the Bellamy-Priest agreement. No money had been received by them for this agreement, so the appellees charged, and the vendees had demonstrated by subsequent actions that they had had no intention to perform. They asserted that the vendees had agreed to sell certain lands immediately but had not, and that they had failed to quiet the title to various parcels or tracts involved within a reasonable time which had elapsed.
The appellees next undertook to link the option and the agreement by averring that the original optionee had agreed to secure title insurance but that neither he nor any of the defendants had applied for it. Further, they averred that, under the option the optionee was obligated to release, satisfy and discharge the option if he did not exercise his privilege under it.
On 15 December 1954, Joe Priest, Maxine Priest and Joe Priest, Inc., assigned both the option and the Bellamy-Priest contract to Joe Priest, C. M. Dunham, M. D. Andrews, P. C. Crapps, Jr., L. M. White and Harlow Land so all these are now appellants.
From the unfortunate composition of these instruments it is not difficult to conclude that the title to the land of the owners is now badly in need of quieting, if it was not before, but it is not so easy to decide that the appellees were entitled to relief in view of their own failure to carry out their obligations under the option they executed to W. T. Cox, Trustee. After executing an instrument containing the strange provision that they, themselves, would be limited to a certain period for quieting the title, if the buyer decided that would be necessary, they seem to have done nothing to that end and were in default when their optionee assigned to Joe Priest, Inc., and others.
The whole transaction was further complicated by the new agreement with the assignees by which the obligation to bring the suit was transferred to the buyers from the sellers. As we understand the record, the buyers under the second instrument assignees of the option, did nothing toward clearing the title.
The terms of option were conflicting and ambiguous within themselves and when the terms of the option now transferred to the second parties of the Bellamy-Priest contract are read with the provisions of that agreement, the confusion is aggravated.
The chancellor found that the original optionee, W. T. Cox, had failed to perform his obligation to close a contract with a title insurance company, but we are unable to attach much importance to such apparent default in view of the report by the op-tionee to the optionors that suit to quiet title would be necessary and the acknowledgment of the report and the reply emphasizing the expiration date of the option in any event. Furthermore, the option was assigned a few days before its expiration and it seems to us that in view of the assignment and later contract between the optionors and the assignees, this litigation must be determined on the bases of the contract and the facts that developed after it was executed. There is no occasion further to discuss the effectuality of the option at the time it was assigned except to say that whatever interest was left at that late *67 date was by the terms of the later contract merged in it.
After concluding that neither the original option, the assignment of it, nor the last assignment by Joe Priest, Maxine Priest and Joe Priest, Inc., affected the title to the property of appellees, the chancellor concentrated on the Bellamy-Priest contract. In essence he thought it had been definitely shown that the sellers had been the “victims of misrepresentation, deceit and fraud” and he excoriated the attorney who had prepared the contract for the buyers and upon whom, the chancellor thought, the sellers relied to their grief.
Inartificially as the contract appears to have been drawn, we do not find support in the record for the charge that the apparent inexpertness of the author was studied, or purposeful. Nor do the actions of the parties afterward convince us that any advantage was taken of the sellers by the buyers. It seems to us that the indifference of the latter was matched by the lethargy of the former. There is evidence, so far as we know uncontradicted, that repeated attempts were made by the buyers to close the deal and that their messages to that end were met with excuses why the sellers could not meet them for the purpose. The last of these messages was delivered 15 November 1955 and brought the reply from W. A. Bellamy not to worry about the matter that he was going to close the deal, that for one reason or other he had been unable to meet the appellants but he was coming. Two days later he brought this suit.
We conclude that from the very nature of the transaction and the character of the contract in which the option seems to have been merged, the appellees were not in position to cancel or rescind by the process of bringing the suit/ They possibly once possessed the right to bring the matter to an end because of the lapse of a “reasonable time” but to do so they should have first given the. appellants notice of such intention. Realty Securities Corporation v. Johnson, 93 Fla. 46, 111 So. 532; Savage v. Horne, 159 Fla. 301, 31 So.2d 477.
We must disagree with the chancellor and reverse his decree with directions to proceed in accordance with the views we have expressed. Reversed.
TERRELL, C. J., and ROBERTS and THORNAL, JJ., concur.