# JOHN FITCH

*v.*

# ELISHA W. WILLARD.

1. CONTRACT—*for sale of land, construed as to vendor's undertaking in respect to the title.* A clause in a contract for the sale of land, that the vendor is to furnish a satisfactory abstract of title, and give a quit-claim or special warranty deed, upon the tender of which the cash payments are to be made, implies no undertaking as to the character of title to be conveyed, but, on the contrary, shows that the vendor assumes no responsibility as to the title any further than it may have been affected by his own acts.

2. SPECIFIC PERFORMANCE—*defeated by laches.* On bill by a purchaser of land for specific performance, filed over five years after the making of the contract, during which time he never offered to perform on his part, it was *held*, that his *laches* was such as to preclude his right to relief, unless satisfactorily explained.

3. SAME—*excuse for delay and failure to perform.* Where the vendor of land assumes no responsibility as to his title, and is to make only a quit-claim or special warranty deed, but is to furnish a satisfactory abstract of title, the purchaser, for a reasonable objection to the title, may elect whether he will accept a conveyance. If he elects to take it under a contract which is unilateral, any delay on his part in complying with its terms, will be regarded with especial strictness. The fact of objection to the title in such a case, does not justify great delay on the part of the purchaser in performing.

4. ADMISSION—*of contract is none of its construction.* The admission by a vendor, in a suit by a third party against him and his vendee, of the execution of a contract of sale, is no admission of the proper construction to be put upon it in a suit between the vendor and vendee for specific performance, or of the vendee's right to have the same specifically enforced.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a bill in equity, by the appellant against the appellee, filed in the Superior Court of Cook county.

On the 25th day of September, 1857, James Boggs, George Boggs, his son, and Redmon Colter, being owners of the southwest fractional quarter of section 19, township 38 north, range 15 east, in Cook county, conveyed the same, by way of mortgage, with power of sale to mortgagees, their assigns, etc., to Julius Crane and William P. Apthorp, to secure the payment of certain promissory notes which had been given for the purchase money of this land.

On the 27th day of September, 1858, Redmon Colter and wife conveyed their interest in the land to George and James Boggs. On the 15th day of December thereafter, Crane and Apthorp sold and assigned the notes and mortgage to Elisha W. Willard, the appellee. On the 5th day of November, 1861, Willard sold the land, pursuant to the terms of the power contained in the mortgage, to one George Smith, for the sum of $300, and executed to him a deed. While the terms of the power authorized a sale by the assignee of the mortgage, the deed was required to be made by the mortgagees.

On the 14th day of July, 1862, Smith sold and reconveyed the land by quit-claim deed to Willard, for $334, as expressed in the deed. After this purchase by Willard, he seems to have authorized James Boggs to look after the property for him, and he led Boggs to believe that, in the event of a future sale of the property, he should, in some way, receive the benefit of all it should sell for, beyond an amount sufficient to reimburse himself for his outlays and expenses on account of it.

On the 18th of November, 1867, Willard, by a letter written from Newport, R. I., informed Boggs, after expressing the opinion that there must be 83 acres in the tract, that he would sell the land for $200 per acre, actual measurement, but in no event under 80 acres, or $16,000, half cash, balance in equal payments of one and two years, on short time, at purchaser's option, with interest, semi-annually, at 6 per cent, the title to be quit-claim or special warranty deed, and the deferred payment to be secured by deed of trust, with power of sale. He

also required that the party making an acceptable offer should deposit with Messrs. Blodgett & Winston, his attorneys, such sum as they might require, and directed that this letter should be preserved as a sufficient explanation to his attorneys. It was further stated in the letter, if the land would bring more than the amount stated, "so much the better," and the proposition was to remain open until the 1st day of the ensuing January.

On the 6th day of December, 1867, John Fitch, being in negotiation with J. H. Reese & Co., real estate brokers, for the purchase of a tract of land lying immediately to the west of and adjoining the tract in controversy,—known as the Wicker tract,—proposed to them to buy this tract also. They thereupon addressed a note to James Boggs, informing him they were offered $200 per acre for the tract, the purchaser paying cash for amount due Willard, if not more than $5500, and the balance on "canal time." Upon the receipt of this letter, Boggs indorsed it: "83 acres at $200 per acre; J. Boggs," and returned it to Mr. Pierce, one of the firm of Reese & Co., and at the same time placed in his hands Willard's letter of the 18th of November. Pierce presented these papers to Messrs. Blodgett & Winston, and renewed the offer contained in their note to Boggs. Blodgett & Winston declined to make any contract, on account of having no authority, but, at the request of Reese & Co., wrote to Willard, informing him of their offer,—that they would pay $16,600 for the tract,—$5500 in cash, balance on time. On the following day, December 7, Reese & Co. also wrote to Willard, making him the same offer. At the conclusion of their letter, they say: "If the above terms are satisfactory to you, please forward a deed to John Fitch, and abstract of title to Messrs. B. & W."

December 10, 1867, Willard wrote to Blodgett & Winston, from Newport, R. I., as follows: "I will sell the land on the lake shore strictly in terms of my letter to Mr. Boggs, of November 18th, and if he is entirely satisfied with estimating the quantity of the land at 83 acres, and $16,600 the sum for it, I am quite agreed. The terms of payment I don't think it wise

to alter, to-wit: half, cash down, balance in equal payments of one and two years, with interest, semi-annually, at 6 per cent, the title from me to be a quit-claim or special warranty deed; deferred payments secured by deed of trust, with power of sale, the purchaser paying all taxes and assessments, and enjoying the right of paying up the whole at the end of the first year, and stop interest.     *     *     *     *     If the sale goes off, I should wish all the business done through you."

Reese & Co. were notified of the receipt of this letter, and on the 14th of December, 1857, a contract was closed, as witnessed by the following instrument:

"Received, Chicago, December 14th, 1867, of John Fitch, of Chicago, Illinois, five hundred dollars on account of sale of eighty-three acres, more or less, in fractional section 19, 38, 15, for sixteen thousand six hundred dollars, upon following terms, to-wit: Two hundred dollars per acre, one-half cash, balance in one and two years, equal payments, with interest at six per cent, payable semi-annually, the purchaser agreeing hereby to pay for eighty-three acres; the purchaser to pay all commissions in making sale, and taxes and assessments for current year. The seller to furnish satisfactory abstract of title, and to give a quit-claim or special warranty deed, and upon a tender of which the cash payment to be made, and deferred payments secured by trust deed, with power of sale.

(Signed)     .     E. W. WILLARD,
Per F. H. WINSTON.

JAMES BOGGS,
Per F. H. WINSTON."

On the 17th of December, Willard wrote Blodgett & Winston that if, prior to the receipt of that letter, the sale of the land had not been fully closed in the terms set forth, and by the deposit of the money with them as required, they would consider the land as peremptorily withdrawn from sale; and on the same day, by a letter to James Boggs, he notified him to the same effect.

Blodgett & Winston, by letter dated January 3d, 1868, informed Willard that they had concluded the contract with

Fitch; that an unexpected delay in completing the abstract had delayed the closing up of the purchase; that it was then completed and title accepted. They inclosed a special warranty deed, which they requested Willard and wife to execute, and that it be returned.

On the 8th of January, Willard again wrote Blodgett & Winston, acknowledging the receipt of the deed, but asking, before returning it, a definite answer to his letter of the 17th of December, and whether the contract had been closed prior to the receipt of that letter, and saying, in conclusion, "Of course, if the terms had been agreed upon, I shall carry out the sale, and I desire full particulars regarding it, the terms in detail, etc."

On the 11th of January, Blodgett & Winston replied to this letter, informing Willard that the sale to Fitch was closed on the 14th of December, upon the precise terms of his letter of December 10, adding, "subject, of course, to a satisfactory abstract of title, which has since been approved." Upon receipt of this, January 17, Willard inclosed the deed, properly executed, to Blodgett & Winston, and giving them full instructions with regard to the execution of the trust deed to secure deferred payments.

It is shown by the evidence that the abstract of title was first examined by Reese & Co., who informed Blodgett & Winston that it was satisfactory, and requested them to have Willard to forward the deed; and it was to this statement of Reese & Co. that they refer in their letter to Willard of January 3d, in saying that title was accepted.

Reese & Co. were mere brokers, not in the habit of examining and giving opinions as to the sufficiency of titles, and both they and Fitch swear they were not employed by him to render such service in the present instance. Fitch employed, as his attorney, Wm. C. Goudy, to whom he submitted the abstract. Goudy, after examining the abstract, made objections to the title, and when informed by Winston that he had Willard's deed, as well as the deed of James Boggs, conveying the

property to Fitch, pursuant to the contract, pointed them out to him. They were—

*First*—That, on account of the small amount bid by Smith at the trustee's sale, the intimate relations then existing between Smith and Willard, and the subsequent conveyance by Smith to Willard for but a slight advance on the amount bid by Smith, a strong suspicion existed that Smith purchased for Willard, and not for himself, and that the sale was, therefore, void; but he conceded that Fitch, purchasing for value, without notice that Smith's purchase was not made in good faith, would be protected, and did not, therefore, insist on this objection.

*Second*—That the power in the mortgage simply authorized the assignee to sell, but not to convey, and required that conveyance should be made by the mortgagees, Crane and Apthorp.

This objection he firmly insisted upon, but suggested to Winston that it might be removed by their obtaining a deed from the mortgagees. Upon being informed by Winston that this would be impracticable, by reason of unfriendly relations between them and Willard, he next suggested that it might be obviated by quit-claim deed from the mortgagors. James Boggs having already executed and placed in Winston's hands such a deed, it would only remain to obtain one from George Boggs. Winston neither assented to nor dissented from the correctness of this objection to the title. When the proposition was suggested of getting the quit-claim of George Boggs, he encouraged Fitch in making efforts to that end, but distinctly stated that he was not authorized by Willard to incur expense for that purpose. He states, in his examination, he thought the trade was a good one for Willard, and it was to his interest to have it carried out.

On the 24th of January, 1868, Blodgett & Winston wrote Willard: "The purchaser has not closed the matter, for the following reasons: His attorney now says that there should be a deed obtained from George Boggs, son of the old man, and who owned the legal title at the time of the mortgage sale. The purchaser contends that the sale (to George Smith) was

7—73D ILL.

made for so small a consideration ($300) compared with the present value of the land, that there should be a reconveyance from the original owners and mortgagors. Young Boggs now resides at Fort Kearney, Nebraska, and the purchaser wishes us to obtain the deed on your behalf, although he expresses himself willing to pay something to George Boggs for the deed, rather than have the sale fall through."

To this, Willard, on the 31st of January, replied: " I do not understand that a deed from George Boggs is at all essential to my title to the land, and if correct in this opinion, I can undertake no trouble or expense in that regard.     *     *     * Having conformed, on my part, to the agreement with Mr. Fitch, entered into on the 14th of December, per your letter of the 3d inst, and Mr. Fitch having expressed himself satisfied with the title, as revealed by the abstract, it now remains for him to fulfill his part of the contract or back out, and if he chooses the latter, he can do no less than pay the expenses incurred, including your services. I wish to do everything proper on my part. If the sale falls through, please return the deed from me."

Another letter from Willard to Blodgett & Winston is in evidence, dated March 9, referring to a previous letter written by him to them on the 2d of that month, inclosing one from George Boggs to him. In it he says: " If, on receipt hereof, the sale of the land to Fitch shall not have been consummated in terms of the agreement entered into with him in December last, you will please return to me the deed which I executed and sent to you, without further demand upon Fitch, or his agent, and regard the land as withdrawn from the market. The attorney of Fitch having accepted the title before the deed was forwarded, the grace extended thus far is entirely gratuitous on my part, and I am not disposed to prolong it. Should there be any substantial defect in the title to the land,—which I can hardly believe,—I will take proper means to correct it. Please cancel the deed effectually before committing it to the mail."

Upon receipt of this letter, Blodgett & Winston returned the deed to Willard, as requested. Fitch and his attorney

were shown the letters from Willard to Boggs, dated November 18, 1857, and from Willard to Blodgett & Winston, dated December 10, 1867, but they neither saw nor were advised of the contents of any of the other letters referred to, until they were read in evidence. The $500 paid by Fitch on the contract was neither returned nor offered to be returned by Willard or his attorney until the service of the notice hereinafter referred to. Fitch made efforts to get George Boggs' quit-claim, but they were unavailing.

In October, 1868, George Boggs filed, in the office of the clerk of the Superior Court of Chicago, his bill in chancery, making Julius Crane, William P. Apthorp, Elisha W. Willard, George Smith, Redmon Colter, James Boggs and John Fitch, defendants, praying to be allowed to redeem from the mortgage executed by James Boggs, George Boggs and Redmon Colter to Julius Crane and William P. Apthorp, on the 25th day of September, 1857; that the sale claimed to have been made under the power therein, by Willard to Smith, be declared void, and that the undivided one-half of the property be conveyed to him, etc.

It was alleged in the bill that John Fitch claimed to have some interest in and to the premises by reason of a pretended contract of purchase of the same with Elisha W. Willard, or some person or persons acting for him and under his instructions. The grounds on which relief was claimed were—

*First*—That the sale was made during the rebellion, and while the complainant was in the city of New Orleans, within the rebel lines.

*Second*—That Smith had bid in the premises for Willard, and no actual consideration passed at the sale.

*Third*—That Willard had no power, under and by the terms of the mortgage, to execute the deed to Smith.

Fitch answered the bill, setting up his contract with Willard in full, alleging that he had entered into possession of the property under the contract, and claiming to be a *bona fide* purchaser thereof for a valuable consideration.

Willard also answered, and, so far as it is material to the present controversy, in these words: "And defendant further admits, that a contract was made by his duly authorized agent for the sale of his interest in said property to John Fitch, and that he has learned that said Fitch has taken possession of said land under said contract."

After this, Fitch made a further effort to obtain a deed from George Boggs, which was also unavailing, through a Mr. Gage, who had business in the vicinity of Kansas City, where Boggs then resided. For this purpose he prepared a letter to Gage, designed, however, purely to affect Boggs. The letter was dated February 20, 1869, and contained this paragraph: "As I said to you recently, I am not in a situation to purchase George Boggs' interest, if any he has, as the parties of whom I purchased deny it, and seem confident of defeating him, and will not agree to my paying him out of the purchase money. Last summer I agreed to pay $100 extra, toward getting this cloud off the title. That is all there is in that. I am perfectly willing that you or any one should buy that claim. In fact, I can not have anything to say on that point, as I am situated."

The answer of Willard was prepared by Winston, and that of Fitch by Goudy, as their respective attorneys. The latter was filed on the 23d of January, and the former on the 10th of February, 1869.

After certain depositions had been taken in the case, and before the hearing, Winston employed Goudy to represent Willard also in the suit, agreeing to pay one-half of his fees for attending to the case. On the 7th of September, 1869, a *pro forma* decree was rendered by the Superior Court in favor of George Boggs, from which an appeal was taken to this court. The case was here submitted at the September term, 1869, but taken under advisement until the 28th of September, 1871, when judgment was rendered reversing the decree of the Superior Court.

On the 16th of January, 1870, Willard started to Europe, and did not return until the 25th day of August, 1872.

About the 11th of February, 1870, Fitch, through Goudy, made an offer to Winston, proposing to take and pay for one-half of the land, at the contract price, $200 per acre, and to postpone the completion of the contract, as to the other half, until the termination of the suit. This Winston declined, for the reason that he claimed to have no authority to make such an arrangement.

The Chicago fire occurring shortly after the opinion in the case of George Boggs was filed, the mandate of this court was not filed in the Superior Court until the 13th day of June, 1872. Upon that being done, the attorneys for George Boggs presented his petition to that court to have the case certified to the United States Circuit Court for the Northern District of Illinois. This was resisted by Goudy, as the attorney for Willard and Fitch, and the court refused to certify the case as prayed. Whereupon, on motion of Goudy, as attorney for Willard and Fitch, decree was rendered dismissing complainant's bill. Soon after this, motion was made by the attorney of George Boggs, in the Circuit Court of the United States, for an order of that court to remove the cause from the Superior Court. This was also resisted by Goudy, and the motion was refused.

On the 1st of October, 1872, Willard caused the following notice to be served on Fitch:

"CHICAGO, *October* 1, 1872.

Mr. JOHN FITCH:

*Sir*—You are hereby notified that, in consequence of your refusal to accept a deed and pay the purchase money for eighty-three acres, more or less, in fractional section 19, 38, 15, according to the terms and conditions of a certain contract or memorandum of sale, entered into between the undersigned, of the one part, and yourself, of the other part, we have elected to declare said contract or memorandum, and the sale evidenced thereby, at an end, and this will be your notification thereof. We return herewith to you the sum of five hundred dollars, paid by you upon the execution of said contract or

memorandum, December 14th, 1867, and, in addition thereto, the interest thereon to date, and we demand the possession of said premises.

E. W. WILLARD,

JAMES BOGGS."

In January, 1873, a writ of error was sued out on the decree of the Superior Court in the *George Boggs case,* refusing to certify the case to the United States Circuit Court, and dismissing complainant's bill. This was heard in this court at the September term, 1874, and judgment rendered affirming the decree of the Superior Court.

Willard paid Goudy for his services, in conformity with the contract made by Winston some time in the fall of 1872, and subsequently employed him to attend to the further litigation in the case, without any reference to his employment by Fitch.

On the 4th of October, 1872, Willard brought ejectment against Fitch, to recover possession of the property in controversy, and on the 15th day of May, 1873, the present suit was commenced.

The court below, *pro forma,* decreed that the injunction be dissolved and the bill dismissed, and the following stipulation was at the same time entered into between the parties:

"And the said parties having, by their counsel, stipulated that, upon the case as presented by the record, pleadings and evidence herein, the Supreme Court shall be of opinion that complainant is not entitled to a conveyance of the premises in question, according to the prayer of the bill, and that the defendant is entitled to the possession of said premises upon the payment to complainant of moneys advanced by him on account of said premises, the amount of moneys to be so paid shall be ascertained by the circuit court, and for that purpose the cause shall be remanded, and, upon payment of the same, the defendant shall be let into possession of said premises," etc.

The following errors are assigned:

1. The court erred in dissolving the injunction.
2. The court erred in dismissing the bill.

3. The court erred in not decreeing that the defendant should be perpetually enjoined, according to the prayer of the bill.

4. The court erred in not decreeing that the contract should be specifically performed, according to the prayer of the bill.

5. The court erred in not decreeing that the plaintiff was entitled to a conveyance, according to the prayer of the bill.

6. The court erred in denying the relief as prayed by the bill.

7. The court erred in rendering the final decree in manner and form aforesaid.

8. The proceedings were otherwise informal and erroneous.

Mr. GEORGE W. SMITH, for the appellant.

Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

James Boggs claimed to have no substantial interest in the subject matter of the contract, and he was joined therein only for the purpose of releasing any possible equity he might have. The real contracting parties were Willard upon the one side, and Fitch upon the other, and the questions discussed in the briefs before us, have reference exclusively to their rights and obligations.

In our opinion, under a fair and reasonable construction of the terms of the contract, Willard's undertaking was simply to convey what title he had. He was to furnish an abstract of his title to Fitch, that he might judge for himself as to its sufficiency. If the title was free from reasonable objection, Fitch was bound to accept it; if not, he might either accept or reject it, as he should elect. The clause, "the seller to furnish satisfactory abstract of title, and to give a quit-claim, or special warranty deed, and upon a tender of which, the cash payment to be made, and deferred payments secured by trust deed, and

power of sale," manifestly implies no undertaking as to the character of the title to be conveyed, but, on the contrary, clearly shows that Willard was unwilling to assume any responsibility on account of his title any further than it may have been affected by his own acts. If words had been used showing that Willard undertook to convey a good title, as in the cases cited in the brief for appellant, on this point, the case would have been quite different.

The contract was executed on the 14th day of December, 1867, and the bill in this case was not filed until the 15th day of May, 1873, a period of five years and five months, lacking one day, intervening, during which appellant made no offer to comply with his contract. This is such *laches* as must necessarily preclude his right to the relief prayed for, unless it is satisfactorily explained.

It is attempted to be explained by these circumstances: When Winston, Willard's agent, presented the abstract of his title to Fitch, it was discovered that, by the terms of the power in the mortgage from James Boggs, George Boggs and Redmon Colter to Julius Crane and William P. Apthorp, by virtue of a sale under which Willard's title was derived, while the assignee was authorized to sell, the mortgagees were alone empowered to convey the title, after sale, and it was claimed that Willard's deed to Smith, therefore, being the conveyance, simply, of an assignee who did not hold the legal title, was ineffectual for the purpose intended; that this objection was pointed out to Winston, and that, to obviate it, it was understood, inasmuch as Redmon Colter had conveyed his interest in the property to James and George Boggs before the sale, and James Boggs had executed his deed and placed it in Winston's hands, to be delivered at the same time with Willard's deed, it would only be necessary to obtain a deed from George Boggs; that Winston encouraged appellant in trying to obtain the deed from George Boggs, during which efforts considerable time elapsed; that appellant was placed in possession of the property by Willard, and made valuable improvements thereon; that in October, 1868, George Boggs filed his bill in chancery

against Willard, Fitch and others, claiming to be owner of one-half of the property, and asking to be allowed to redeem from the mortgage under which it had been sold, and that the sale be set aside; that in this bill it was alleged, Fitch had a contract with Willard for the purchase of the land, and was in possession; that Fitch answered, setting up his contract and possession thereunder, and claiming to be a *bona fide* purchaser thereof in good faith, without notice, etc.; that Willard also answered, and, among other things, his answer contained this clause: "and defendant further admits, that a contract was made by his duly authorized agent for the sale of his interest in said property to John Fitch, and that he has learned that said Fitch has taken possession of said land under said contract;" that Winston was the attorney of Willard in preparing his answer, and Goudy was the attorney of Fitch in preparing his; that subsequent to the filing of these answers, and before the case came on for hearing, Winston employed Goudy to represent Willard also in the suit, agreeing to pay one-half his fees; that thenceforth Goudy represented both Willard and Fitch while said case was pending in the several courts; that decree *pro forma* was rendered in the court below in favor of George Boggs, from which an appeal was taken to this court, where, in September, 1871, judgment was rendered reversing the *pro forma* decree; that in consequence of the great fire in Chicago, which happened shortly after this, the mandate of this court was not filed in the court below until in June, 1872, at which time motion was made in the court below to certify the cause to the Circuit Court of the United States for the Northern District of Illinois; that upon this being refused, application was made in the United States Court for an order directing that the case be brought before it; that upon this being refused, the attorney of George Boggs gave notice to Goudy that he would prosecute a writ of error on the record to the Supreme Court of the United States, and that he did sue out a writ of error on the record to this court, which was pending at the time of the hearing.

The evidence does show that when the objection was urged to Willard's title that George Boggs had an interest in the property, Winston did not deny it, and he encouraged Fitch in making an effort to obtain it. It also shows, however, that he expressly disclaimed any authority to incur expense on behalf of Willard on that account, and it is not pretended that any definite agreement was made giving Fitch time to obtain that title. Indeed, it is very certain that Winston had no authority to make such an agreement, and this Fitch is chargeable with knowing, for he had seen the letters from Willard to James Boggs, dated Nov. 18, 1867, and from Willard to Blodgett and Winston, dated Dec. 10, 1867, which contained all the authority with which he was vested. These letters show, as plainly as did the letter in *Baxter* v. *Lamont*, 60 Ill. 237, that only a present sale, or, at least, one to be consummated within a reasonable time, was contemplated. The position assumed by counsel, that Winston was a general agent, having full power to use his discretion in regard to the sale, is not sustained by the evidence. It clearly appears, that both before and subsequent to the sale he disclaimed any such power, in conversations with Fitch and his agents. He was, generally, the attorney at law representing Willard in such matters as required the attention of an attorney at law, but in respect to the sale and management of property he only acted when specially empowered to do so.

Although the answer of Willard to the bill filed by George Boggs admits the execution of the contract by his agent, it does not undertake to give construction to its terms, and we are aware of no principle upon which it can be held to be an admission that the construction then claimed by Fitch was correct. There was no issue there made between Willard and Fitch, and it is not perceived how any could have been adjudicated in that proceeding settling their rights with reference to each other. The employment of Goudy by Winston for Willard, appears to have been induced solely by Winston's confidence in his ability as a lawyer, and without reference to any question that may or may not have been in dispute between

Willard and Fitch. These facts authorize the inference that Willard knew Fitch claimed rights under the contract which he was incurring expenses to vindicate, but, so far as we perceive, nothing more.

The answer of Willard to the George Boggs bill does not admit, as a fact, that Fitch was in possession under the contract, but simply that he had learned that Fitch had taken possession of the land under the contract. The evidence rather tends to prove that Fitch took possession of the land tortiously, in violation of the rights of a tenant in possession, and without the knowledge or consent of Willard or his agent. Fitch himself swears differently, but the preponderance seems to be against his evidence in this respect. To say the least, the evidence does not clearly show that Fitch went into possession, in fact, under the terms of the contract.

Winston swears that he had the deeds of Willard and James Boggs in his custody, shortly after the execution of the contract, ready to be delivered to Fitch, and that he notified Fitch, or his agent, of the fact. Fitch admits that he knew Winston had the deeds, ready to be delivered to him, and that he would not have received them, had they been actually offered to him, until the objection to the title, on account of the supposed interest of George Boggs, was removed. Insisting on this objection, he, practically, rejected the very title which he now asks be decreed to him, for it was not necessary that the useless form should have been gone through with of offering a deed which it was known would not be accepted.

Without undertaking to determine whether the objection to the title was reasonable or not, it is sufficient, for the present purpose, if it was unreasonable, the refusal to accept the title then ready to be delivered precludes any claim to the relief now sought. *Kimball et al.* v. *Tooke et al.* 64 Ill. 380; *Doyle* v. *Teas*, 4 Scam. 202. If, however, it was reasonable, then, to the extent Fitch might elect to take the title, notwithstanding the objection, the contract was unilateral, and, in such cases, any delay on the part of the purchaser in complying with it

is regarded with especial strictness. *Estes* v. *Furlong*, 59 Ill. 300.

Fitch admits that Winston denied that he was authorized to to assist him in getting the title of George Boggs, and that he claimed to have authority, only, to sell the title Willard had. At no time does it appear that Winston's authority in this regard was enlarged. Willard himself, it is not pretended, ever undertook to make any terms with Fitch in regard to the property.

Knowing, then, Willard's unwillingness to incur expense to perfect the title, and that the contract made related only to the title he then had, what reason could Fitch have for supposing that Willard intended to allow him to await the result of the litigation with George Boggs, before he determined whether he would accept Willard's deed or not?

Something over four years elapsed after the filing of Willard's answer to the bill of George Boggs, before the commencement of this suit. During all that time, Fitch made no offer to comply with the contract. Even after he was notified, in writing, by Willard, that the contract was rescinded, and an action of ejectment was commenced against him to recover possession of the property, he made no offer to comply with his part of the contract, but, after waiting for some seven months, he filed the present bill. It does not appear, from the evidence of Fitch, that he made this contract with the view of acquiring the property for his personal use, but the inference to be drawn therefrom is, that it was merely for the purpose of speculation. By his negligence in complying with his contract, Willard's money has remained, from the time the contract was made, tied up in this property, while his has been free, to be used in other speculations, as his inclination determined. In effect, to decree a specific performance in the present instance is, to decree so much money as is equal to the increased value of the property, beyond the contract price, out of Willard's pocket, and into that of Fitch, on account of a contract under which Fitch assumed no absolute liability and

ran no risk.   It is usual,. and much better, in cases of this character, to leave the parties to their remedy at law.

We are of opinion that Fitch has been guilty of such *laches* in performing his part of the contract, as renders it *inequitable* that he should have the relief prayed for.   See *Cox* v. *Montgomery*, 36 Ill. 396; *Mason* v. *Owens*, 56 id. 260; *Taylor* v. *Merrill*, 55 id. 59; *Shortall* v. *Mitchell*, 57 id. 161.

The decree of the court below is affirmed, and the cause will be remanded to the court below to take an account pursuant to the stipulation of the parties as embodied in the record.

*Decree affirmed.*