F. M. DEHUY, *Appellant,* v. JOSEPH B. OSBORNE, and His Wife, AMELIA B. OSBORNE, *Appellees.*

En Banc.

Opinion filed September 25, 1928.

*F. W. Pope,* of Daytona Beach, *Landis, Fish & Hull,* and *Erskine W. Landis,* of DeLand, for Appellant;

*M. G. Rowe,* of Daytona Beach, and *Massey, Warlow & Carpenter,* of Orlando, for Appellees.

STRUM, J.—This is a suit in equity seeking the specific performance of a contract to convey certain lands on which is located a hotel known as the Osborne House in the City of Daytona Beach, together with all furnishings in said hotel contained. The purchaser, DeHuy, was complainant below and is appellant here. After the pleadings were settled and the testimony of the parties taken, the chancellor entered a final decree dismissing the bill. This appeal is from that decree.

The vendors resisted the suit on the ground that complainant is guilty of laches in asserting his rights. To this the complainant-purchaser replied that the vendors first breached the contract in that they never tendered complainant a marketable title of record to the lands, and the defendants thus being in continuing default themselves can not put the complainant in laches until the defendants have purged their own default.

The contract was executed on April 14, 1923. Amongst other things it contained the following provisions:

"And the said party of the second part (the purchaser) agrees to buy the above described property, and to pay therefor to the said parties of the first part, the sum of Forty Thousand ($40,000.00) Dollars in the manner following: Five Hundred ($500.00) Dollars cash, upon the signing of this agreement, the receipt whereof is hereby acknowledged by the parties of the first part; Nineteen Thousand Five Hundred ($19,500.00) Dollars upon delivery of warranty deed properly executed, and abstract showing good and merchantable title to the property herein described, in parties of the first part, which said title as shown by said abstract, shall be approved and passed by the attorney for the party of the second part before the

acceptance of said deed, and the payment of Nineteen Thousand Five Hundred ($19,500.00) Dollars, and the balance of Twenty Thousand ($20,000.00) Dollars to be paid * * * etc.''

Time was not the essence of the contract. On May 1, 1923, the purchaser's wife demanded possession, but possession was then refused by the vendors because only $500.00 had been paid, the sale had not been fully consummated. The purchasers were never at any time in possession. Abstracts were thereafter furnished by the vendors, and on May 9, 1923, the purchaser's attorney rendered his opinion that the title as shown by the abstracts was not a good merchantable title of record, pointing out the deficiencies in the record title upon which he based his conclusions. Soon thereafter the purchaser visited the vendors and told the latter that he was willing to call the trade off provided the vendors would pay the expense the purchaser had been put to, but the vendors declined to pay the expense, whereupon the purchaser said, ''Very well, we will go ahead with the trade then. I am perfectly willing.''

Negotiations then ensued between the attorneys for the parties, as a result of which the vendors procured two quit claim deeds from other persons curing certain of the defects pointed out by the purchaser's attorney. The vendors' attorney then rendered an opinion on the title, pointing out that the defects specified by the purchaser's attorney were based on ancient matters which were not of any consequence, and calling attention to the fact that the vendors had been in exclusive and peaceable possession for twenty-seven years. The vendors refused to remedy the remaining matters claimed by the purchaser to be defects in the record title.

On June 22, 1923, the vendors executed and left with their attorneys a warranty deed conveying the property to the purchaser, which deed, on that day or the next, was tendered by the vendors' attorney to the purchaser's attorney, the former then advising the latter that the vendors "had made the only and last move for them to make and that the next move was the complainant's (purchaser's) move." While not expressly rejected in terms, the deed was not then nor thereafter accepted by the purchaser.

About June 28, 1923, the vendors left the City of Daytona for a vacation, returning about September 5th or 6th, resuming their residence in the property in question. The purchaser also left on a vacation the latter part of June, returning during October.

During the latter part of August, 1923, the vendors wrote their attorney in Daytona to the effect that if the purchaser had not accepted the deed they did not care to go ahead with the deal. The vendors' attorney communicated these instructions to the purchaser's attorney and notified the latter that the deed would not be delivered.

Beginning about November 1, 1923, the vendors begun improvements on the property, completely painting the hotel on the outside and partly on the inside, at a cost of about $600.00, renovated the hotel and got it ready for business and purchased certain linen, carpet and fuel for the winter season at a cost of about $400.00, aggregating "something over $1,000.00," after which the vendors opened up the hotel for business. While the improvements were being made the purchaser passed by the property frequently, but the record fails to show that he took any action in regard thereto.

On December 20, 1923, the purchaser's attorney wrote the vendors that unless steps were taken to clear the title, the purchaser would take steps to compel the vendors to

comply with the contract. The vendors took no action, and on January 24, 1924, the purchaser tendered the second payment of $19,500.00, and a note and mortgage evidencing and securing the remainder of the purchase price, which tender was declined, the vendors then stating that they had "considered the deal off for sometime." At that time the hotel was filled to capacity with guests. On the same date this suit was instituted.

The above quoted provisions in the contract contemplated, not merely that the title of the vendors shall be a "good, merchantable title," but that the *Abstract shall show* such a title in the vendors. An abstract is an epitome of the record evidence of title. It is evident therefore that the parties contracted with reference to the record title. 2 Warevelle, Vendors, 764; Maupin Market. Tit. (3rd ed.) 25, and cases cited. That such was the case is emphasized by the further provision of the contract that "in the event of the title as *shown by the abstract* being defective the vendors agree to have such defects remedied without delay in manner satisfactory to the purchaser." Such an undertaking is not fulfilled by the tender of a title resting partly upon record evidence but also depending in material respects upon matters *in pais*, such as adverse possession. Barclay v. Bank of Osceola County, 82 Fla. 72, 89 So. R. 357. The undertaking of the vendors in this case differs materially from that involved in Felt v. Morse, 80 Fla. 154, 85 So. R. 656, and in McCaskill v. Dekle, 88 Fla. 285, 102 So. R. 253. The parties having elected to contract with reference to the record title only, the question of title based in part upon adverse possession, or other matters *in pais*, is irrelevant to a determination of the rights and liabilities here involved.

Every valid undertaking to convey land implies the conveyance of a good title, unless of course such an obliga-

tion is excluded by other provisions of the contract. Wheeler v. Sullivan, 106 So. R. 876; Holland v. Holmes, 14 Fla. 390; Frazier v. Boggs, 37 Fla. 307, 20 So. R. 245; Shouse v. Doane, 39 Fla. 95, 21 So. R. 807. That obligation, however, where the contract does not in effect require the conveyance of a good marketable title "of record," may be discharged by the conveyance of a title resting partly in parol, but free from doubt upon questions of both law and fact. Felt v. Morse, McCaskill v. Dekle, *supra*. But the distinction between "a good marketable title," and "a good marketable title of record" or "as shown by an abstract," is obvious. Barclay v. Bank of Osceola County, *supra*. A vendor's obligation to deliver a good marketable title *of record* is not fulfilled when the validity of the title tendered depends upon material facts not susceptible of reasonably definite ascertainment or proof by record evidence, at any and all times, by those who may need to prove them for the protection of the title, or in other words, when the title tendered is not deductible of record with reasonable certainty. Of course, any objection to the sufficiency of the record evidence must be founded on reason and can not be "capricious, fanciful or arbitrary." Smith v. Taylor, 23 Pac. R. 217; McCarty v. Helbling, 144 Pac. R. 499; Maupin Market. Tit. (3rd ed.) 24, 767, 788, 810. See also Wheeler v. Sullivan, 106 So. R. 876; Van Riper v. Wickersham, 76 Atl. R. 1020, 30 L. R. A. (N. S.) 25; Ann. Cas. 1912A 319; Desemmeur v. Rondel, 74 Atl. R. 703; Rozier v. Graham, 48 S. W. R. 470; Wesley v. Eels, 177 U. S. 370; 44 Law. ed. 810. Without going into unnecessary particulars, the title "as shown by the abstract" in this case, and without resort to matters *in pais,* is not a "good merchantable" title when requested by the requirements just stated.

The second payment of $19,500.00 was not due until the

vendors had tendered an abstract showing a good, merchantable title, and if the purchaser had been vigilant and his conduct equitable in asserting his rights upon the failure of the vendors to furnish such title, he might have successfully sought the aid of equity in compelling performance by the vendors. Toomer v. Chancey, 109 So. R. 641.

So long as the vendors remain in default, equity will not enforce the contract at their instance, nor permit them, by giving notice, to put the purchaser in default as a basis for relief in a suit in which the vendors are the actors. And if the vendors remain in unjustifiable default for an unreasonable time under all the circumstances, their own laches will bar their right to relief in equity though they may ultimately offer to perform. But if the purchaser would seek the aid of a court of equity he must act with appropriate diligence in asserting his rights after he knows he must act, even though the vendors be in default and though time is not of the essence of the contract. Time though not essential, is always material in equity, and equitable *remedies* originally available may be lost by unreasonable delay, though the other party was initially in default. Pomeroy's Spec. Perf. (3rd ed.) Sec. 473. It is a familiar principle that where a party is not reasonably diligent under all the circumstances in asserting his claim for specific performance, the delay may render it inequitable to enforce his claim, though it is otherwise meritorious. Nobles v. L'Engle, 61 Fla. 696, 55 So. R. 839.

So long as negotiations continued between the parties as to the necessity for and the manner of perfecting the title, and each party thereby acquiesced in the delay of the other, laches accrued against neither. But when the vendors notified the purchaser on June 23, 1923, that they would not further perform, that brought the negotiations

to an end, and the purchaser not being in possession, it became his duty to elect his remedy and to act without unreasonable delay under all the circumstances in asserting his rights if he would seek the aid of equity, particularly if while the purchaser delays there ensues a substantial change in the status or value of the property. While the law of specific performance will not be administered in a spirit of technicality so as to defeat the ends of justice, a party can not dally with his rights and still ask the aid of a court of equity.

It is true the vendors became in default in not tendering a marketable title of record. At no time thereafter were the vendors entitled to have the contract specifically enforced, because the courts will not require the performance of a contract at the instance of a plaintiff who has not performed, or who is not able to substantially perform, on his part, unless such default be waived. Therefore these vendors could not under the circumstances, by giving notice, place the purchaser in default as a basis for equitable relief upon complaint of the vendors. Nevertheless, it is the duty of a purchaser who is not in possession, if he would invoke the aid of a court of equity, when he is put upon notice that the vendor can not or will not deliver a good title as he contracted to do, to elect with reasonable promptness whether he will seek by suit for specific performance the conveyance of such title as the latter can convey, with abatement in the purchase price where appropriate, or whether he will resort to an action at law for his damages for breach of the contract, or whether on the other hand he will exercise his right to consider the contract abandoned. Where the purchaser neglects for an unreasonable time under all the circumstances, without sufficient explanation, to elect and act upon his equitable remedy, his right to specific performance may be barred

by his own laches, notwithstanding the original default of the vendor, and although time is not óf the essence. The purchaser is not put in default under his contract because he did not offer to perform when the vendor was himself in default, but he is barred from equitable relief because he unreasonably delayed under all the circumstances in asserting his equitable rights after notice that it would be necessary for him to act. What has just been said with reference to the vigilance required of the purchaser under these circumstances is particularly applicable when a change in the status or value of the property has occured during the intervening delay, or the value of the property is fluctuating and the delay enables the purchaser to speculate thereon. Knox v. Spratt, 23 Fla. 64, 6 So. R. 924; Hatchcock v. Societie, etc., 54 Fla. 631, 45 So. R. 481. The ground upon which an unreasonable and unexplained delay in this class of cases is condemned by courts of equity is that such delay raises a presumption that the dilatory party has abandoned his contract. Chabot v. Winter Park Co., 34 Fla. 258, 269; 15 So. R. 756, 759; 43 Am. St. R. 192; Knox v. Spratt, *supra*. When such party fails to take action to enforce his equitable rights within a reasonable time under all the circumstances after he is on notice that the other party will not perform, such failure would ordinarily indicate that the dilatory party is thereafter in fact exercising his option to consider the contract abandoned by reason of the default or rescission of the other party.

In Tate v. Pensacola, etc., Co., 37 Fla. 439, 20 So. R. 542; 52 Am. St. R. 251, the decision was postulated upon the fact that the vendee-complainant in that suit was in possession and had made valuable improvements, a circumstance of ''primary importance'' in determing the question of complainant's laches. In that case the court had no occasion

to consider the rule in the aspect nor under the state of facts here presented. The general rule was therein announced, to which we adhere, that the defendant in order to avail himself of plaintiff's delay as a defense, must have performed, or been ready and willing to perform, all of the terms of the contract on his part. In that case, a suit for specific performance by a vendee who had all along been in possession and who had made valuable improvements, the vendor undertook to interpose a defense based upon alleged laches on the part of the purchaser. The contract was enforceable at the instance of either party. Under the circumstances of that case, the rule was correctly applied, for it is also the rule that when a vendee is in possession, and time is not of the essence of the contract, mere delay in bringing suit will not bar relief by specific performance. West Palm Beach v. Lake Side Cemetery Ass'n., 67 Fla. 176, 64 So. R. 751; Pomeroy's Spec. Perf. (3rd Ed.) 375. In the Tate case, the vendee was placed immediately in possession by his vendor and permanently retained possession until he brought his suit, all along exercising all rights of equitable ownership. There could therefore be no presumption from mere lapse of time that he had forfeited his equitable rights, or had abandoned his contract, or had acquiesced in an abandonment or rescission by the vendor. But the doctrine announced in the Tate case was never intended to permit a purchaser who has never been in possession, and who is holding under a contract which may be enforced by him but not by the vendor, which is the case here, as will hereinafter be explained, to lay by under the circumstances here involved for an unreasonable period after he is on notice that he must act, during which improvements are made by the vendor with the acquiescence of the purchaser, and still obtain specific performance on the original terms of sale. See Asia v. Hiser, 38 Fla. 71, 20

So. R. 796. Walton v. McKinney, 94 Pac. R. 1122, was also a case in which the purchaser had been put into possession and had made valuable improvements. Attention is called, however, to the proposition laid down in the first head note in that case.

The doctrine announced in Knox v. Spratt, Chabot v. Winter Park Co., and Asia v. Hiser, hereinabove discussed, in respect to the diligence required of the actor in a suit for specific performance, was not overruled by Tate v. Pensacola, etc. Co., *supra*, but the doctrines laid down in all those cases, when viewed in their proper perspective, are harmonious and correct enunciations of equitable principles. See Hatchcock v. Societie, etc. *supra*.

On June 22 or 23, 1923, when the vendors notified the purchaser they would not perform, the vendors could not have obtained specific performance of the contract at their instance, nor could they have obtained such relief thereafter, because at no time did they tender a good marketable title of record, and the purchaser did not waive that requirement. Cheeseboro v. Mores, 134 N. E. R. 842, 21 A. L. R. 1270, *et seq.;* Ranch v. Wickwise, 164 So. W. R. 460; Wesley v. Eels, 177 U. S. 370, 44 L. Ed. 810. The purchaser, however, who is complainant here, on the date named or at any time within a reasonable time thereafter, being then in no default which had not been waived by the vendors, by complying with the contract on his part, could have exacted specific performance of the vendors, thereby obtaining from them such title as they could convey, thereafter resorting to an action at law for any breach of warranty. Beekman v. Sonntag Inv. Co., 67 Fla. 293, 64 So. R. 948. Thus, there being no mutuality of remedy, the contract became in that respect unilateral and enforceable by the purchaser only. The situation, therefore, was such that it was proper for a court of equity to view with much

greater strictness than under a contract bilaterally enforceable, the element of time in respect to the good faith and diligence of the purchaser in seeking relief, even though time was not of essence of the contract, as time though not of the essence is always material, and usually of importance, when considering a contract which is unilateral as to the remedy. McDermid v. McGregor, 21 Minn. 111; Pomeroy's Spec. Perf. (3rd Ed.) Sec. 411. Under these circumstances, and the other circumstances hereinabove set out, any substantial delay on the part of the party entitled to enforce the contract will be closely examined, and if not justifiable or satisfactorily excused, will usually bar such party from relief by specific performance. Longworth v. Taylor, 14 Pet. U. S. 172; 10 L. Ed. 405; Pomeroy's Spec. Perf. (3rd. Ed.) 168, 375, 411; Dynan v. McCullock, 46 N. J. Eq. 11.

So long as this contract remained unilateral as to remedy and enforceable only by the purchaser, the vendors were in the position of not being able either to enforce their contract with the purchaser or to sell or convey the land to others. Yet the purchaser during that time was the equitable owner of the land, and entitled to the benefit of any appreciation in value. Felt v. Morse, 80 Fla. 154, 85 So. R. 656. The result of that situation is to enable the purchaser to retain equitable ownership and dominion over the lands, and to retain the same subject to the exercise of his rights, and at his own election, without himself complying with the contract to purchase. The purchaser was put upon notice that the vendors would not further perform on June 22 or 23, 1923, and from that time he knew he must act. He was entitled to a reasonable time in which to make his election, and to act, but if he elects to enforce a contract which is unilateral as to remedy under the circumstances hereinabove set out, any substantial delay on his part in seeking that remedy, will be

regarded with especial strictness in equity. Pomeroy's
Spec. Perf. (3rd Ed.), Sec. 411.

The purchaser did not accept the deed tendered him in
June, 1923, but in effect rejected it and refused to accept
the title tendered. A little more than seven months later
he recanted from that refusal, and then sought to obtain
by specific performance the same title he had theretofore
rejected, and upon the same terms of sale. Meanwhile,
however, the vendors had enhanced the value of the prop-
erty by making the improvements mentioned, had reno-
vated and partially refurnished the hotel with carpets and
linen, had laid in fuel, and had opened up the hotel for
the winter season, during all of which time the purchaser,
though living nearby in the same city and though passing
the property from time to time, sat by in apparent
acquiescence, making no move to enforce his equitable
rights until the hotel was filled to capacity with guests
for the winter season. While the purchaser denied that
his delay was for speculative purposes, it is a matter of
common knowledge, of which this Court will take judicial
notice (See McCaskill v. Dekle, 88 Fla. 285, 102 So. R.
252), that the market value of real estate in that locality
at that time was fluctuating and very generally on the
increase.

Apparently, the complainant was originally entitled to
specific performance (See Toomer v. Chancey, *supra*) inso-
far as it was possible for the vendors to perform. See
Knox v. Spratt, 19 Fla. 817; Idem 23 Fla. 64, 6 So. R.
924; Williams v. Mansell, 19 Fla. 546; Beeckman v. Son-
tag Inv. Co., 67 Fla. 293, 64 So. R. 948; Fisher v. Miller,
92 Fla. 48, 109 So. R. 257; Realty Securities Co. v. John-
son, 93 Fla. 46, 111 So. R. 532. However, complainant's
unexplained delay of seven months in seeking a unilateral
remedy, available to him only, after he was on notice that
the vendors would not further perform, during which time

he occupies the status of an equitable owner entitled to any appreciation in value, but virtually with all the rights and the immunity from liability of a mere optionee, and during which time substantial improvements were made to the property, a hotel, of which the purchaser had knowledge and in which he acquiesced, coupled with the fact that the purchaser was never in possession, and waited to assert his rights until the hotel was filled with guests for the winter season whom the vendors had admitted to the hotel following the purchaser's apparent abandonment of the contract, renders inequitable, under those circumstances, the granting of specific performance. Giddens v. Estero Bay Estates, 18 Fed. (2nd) 265; Knox v. Spratt; Asia v. Hiser, Chabot v. Winter Park Co., Nobles v. L'Engle, Hatchcock v. Societie, etc., all hereinabove cited; Gentry v. Rogers, 40 Ala. 442, 448; Findlay v. Koch, 101 N. W. R. 766; McDermid v. McGregor, *supra;* Fitch v. Willard, 73 Ill. 92; Pomeroy's Spec. Perf. (3rd Ed.) 411; 25 R. C. L. 250; 36 Cyc. 728. See also Forssell v. Carter, 65 Fla. 512; 62 So. R. 926; Realty Securities Corp. v. Johnson, *supra.* Certainly, it cannot be said that the chancellor was clearly in error in denying such relief under the circumstances. See Rundel v. Gordon, 92 Fla. 110, 111 So. R. 386; Gaskins v. Byrd, 66 Fla. 432, 63 So. R. 824; Murphy v. Hohne, 73 Fla. 803, 74 So. R. 973.

For the reasons already stated, the decree dismissing the purchaser's bill does not permit the vendor-defendants to take advantage of their own default. Nor does it deny the purchaser relief because he did not tender performance on his part while the vendors were themselves in default. It withholds equitable relief from the purchaser on account of his own failure to assert his equitable rights within a reasonable time under all the circumstances after having knowledge that he must elect his remedy and act. Asia v. Hiser, *supra.*

In Toomer v. Chancey, 109 So. R. 641, a suit by a vendee to compel specific performance, in which the vendee alleged that he had not made or tendered the second payment because the vendor was in default in furnishing him an abstract showing a good title in the vendor as he had agreed to do, the contract was entered into on April 30, 1925; the vendor delivered to the vendee an abstract on May 5, 1925; the vendee notified the vendor on May 16, 1925, that the title shown by the abstract was defective, particularizing such defects, after which it was alleged that the vendor repudiated the contract, and the vendee filed his bill for specific performance on July 3, 1925. So no question of an unreasonable and unexplained delay on the part of the vendee-complainant in asserting his rights was involved in that case. What is said herein with respect to the vigilance required of a purchaser in asserting his equitable rights, against a vendor originally in default, is necessarily a limitation upon the general rule announced in Toomer v. Chancey, *supra*.

We are not to be understood as adopting a period of seven months as an arbitrary measure of laches in suits for specific performance. Thus, in Hotel Halcyon Corp. v. Miami Real Estate Co., 89 Fla. 156, 103 So. R. 403, a period of seven months was held not to bar specific performance in behalf of a vendee. But that case and this one differ in essential particulars in respect to the circumstances entering into a determination of laches.

The question of laches turns not merely upon the lapse of time, but also upon the nature and evidence of the rights involved and other relative circumstances occuring during the lapse of time. Geter v. Simmons, 57 Fla. 423, 49 So. R. 131; Norton v. Jones, 83 Fla. 81, 90 So. R. 854. See also Freed v. Miami Beach Pier Corp., 112 So. R. 841. In specific performance, no general rule applicable to all cases

as to what will, and what will not, constitute laches can well be formulated. The existence or the absence of laches must depend upon the facts, or what is commonly referred to as the "equities," under all the circumstances involved, as specific performance is not a matter of strict right, but rests within the sound discretion of the Court, a discretion, however, which is not to be exercised capriciously or arbitrarily, but according to established principles of equity as applied to the particular facts involved. Rose v. Henderson, 63 Fla. 564, 59 So. R. 138; McCrilles v. Cop. 31 Fla. 100, 12 So. R. 643; McCaskill v. Dekle, 88 Fla. 285, 102 So. R. 252.

The vital elements which led us in this instance to affirm the chancellor's view that the complainant was in laches after a lapse of seven months are: (1) That the contract during that time was unilateral as to remedy, enforceable only by the purchaser-complainant; (2) the purchaser was never in possession; (3) the vendors, who remained in possession, substantially improved the property during that time and thereby increased its value, which acts were apparently acquiesced in by the purchaser. Were any of these elements lacking, and were there present in the case no other circumstances of similar import in equity, our view as to the sufficiency of a lapse of seven months to constitute such laches on the part of the purchaser as would bar relief to him might be materially affected by such absence.

The chancellor was technically in error in overruling complainant's exceptions to those portions of defendant's answer asserting or relating to a tender of good title resting upon adverse possession or other matters *in pais*. It is not, however, in view of the controlling circumtances of this case, an error for which the decree should be reversed. We have pointed out that complainant is barred by his own laches in asserting his equitable rights, notwithstanding

the original breach of the vendors in failing to tender a good title of record. We may therefore concede the premise upon which complainant bases his right to specific performance and upon which he relies to justify his delay, and still he is barred. The decree below is therefore sound, even though the chancellor may have been influenced to some degree in his own mind by the facts relating to the vendors' title by adverse possession. Moreover, no substantial objection was made by complainant to the evidence relating to defendants' title by adverse possession. If the decree is sound when tested by applicable and controlling principles, it should not ordinarily be reversed, though the chancellor may have pursued an erroneous course of reasoning, the "discretion" of the chancellor in entering the decree being tested by established principles. Warren v. Warren, 66 Fla. 138, 63 So. R. 726. The complainant seems to have been afforded full opportunity to introduce all available evidence which would affect the question of laches. It would therefore serve no useful purpose to reverse and remand the case on account of the technical error in ruling on some of complainant's exceptions to portions of defendants' answer.

Affirmed.

WHITFIELD, TERRELL AND BROWN, J. J., concur.

ELLIS, C. J., AND BUFORD, J., dissent.