97 So.2d 273 (1957)
J.J. WIGGINS, Appellant,
v.
LYKES BROS., INC., a Florida Corporation, Appellee.
Supreme Court of Florida.
October 4, 1957.
*274 Henderson, Franklin, Starnes & Holt, Fort Myers, for appellant.
MacFarlane, Ferguson, Allison & Kelly, Thomas Alexander, Brooks P. Hoyt and Arthur Simpson, Tampa, for appellee.
HOBSON, Justice.
This is an appeal by defendant from final declaratory decree favorable to plaintiff except in a certain particular which is sought to be raised on cross-appeal. The litigation had its inception when plaintiff, Lykes Bros., Inc., sued J.J. Wiggins, claiming certain grazing rights in lands owned by Wiggins.
The basic facts of the case are briefly as follows: In 1922 and 1923, Reynolds and Tennant, the original owners, conveyed the lands in suit to certain grantees, and the deeds contained reservations of which the following is a sample:
"Reserving however unto the said grantors, their heirs and assigns, the *275 permanent right to use said lands for grazing purposes whenever and so long as said land is not under actual cultivation by grantee, his heirs or assigns. However said grantee, his heirs or assigns, may have the use of any part of said land at any time by fencing the same, for farming purposes."
In 1925, Randolph and Lerch acquired the lands by warranty deed without reservation. In 1950, Randolph and Lerch conveyed the lands to appellant Wiggins, also by warranty deed without reservation.
As for the reserved rights, in 1927 Reynolds and Tennant, the original grantors, executed a quitclaim deed, covering part of the lands, to Carlton. In 1937-1939, Reynolds, Tennant and Carlton executed quitclaim deeds, covering all of the lands, to plaintiff-appellee, Lykes Bros., Inc. It does not appear that the lands were ever used for farming purposes.
The reservation in the original deed appears to be valid, and no direct attack upon it is made. Reservations of this type, which are not in their nature temporary or personal, have been held to run with the land, absent some controlling provision to the contrary. McCoy v. Chicago, M. & St. P.R. Co., 176 Iowa 139, 155 N.W. 995; Barker v. Lashbrook, 128 Kan. 595, 279 P. 12; Benn v. Hatcher, 81 Va. 25; 26 C.J.S., Deeds, § 140(9), p. 1025; 16 Am.Jur., Deeds, Sec. 304, p. 611. Although appellant claims that he had no "actual notice" of the reservation, a title search should certainly have disclosed it. The case would thus be clear, were it not for the following circumstances:
In 1925, Randolph and Lerch, the fee owners, leased the lands to Joe Peoples for cattle grazing purposes, and this lease was continued until 1940, in which year Randolph and Lerch leased the lands to R.D. Lyons for one year for grazing. Thereafter, from year to year until the lands were sold to appellant, Randolph and Lerch, issued cattle grazing leases to members of the Peeples family. Appellee, Lykes Bros., Inc., without any claim of right, began grazing its cattle on the lands in 1929, and apparently continued to do so until 1941, when appellee became sub-lessee, under the Peeples' leases, of the grazing rights to the land. Appellee continued its status as such sub-lessee until 1950, when the fee was acquired by appellant.
Appellant first contends that the plaintiff, by waiting until 1953 (the year this suit was instituted) to assert its claim under the easement reserved in the original grant, was guilty of such laches as to bar the granting of relief. It is well established that mere lapse of time does not in itself constitute laches, Blocker v. Ferguson, Fla., 47 So.2d 694; Bethea v. Langford. Fla., 45 So.2d 496. It is also clear that the applicability of the doctrine of laches depends upon the facts of the particular case. DeHuy v. Osborne, 96 Fla. 435, 118 So. 161; Fort Pierce Bank & Trust Co. v. Sewall, 113 Fla. 811, 152 So. 617.
Appellant relies on Geter v. Simmons, 57 Fla. 423, 49 So. 131, and Norton v. Jones, 83 Fla. 81, 90 So. 854, but both of those cases depend upon a change of circumstances, and in each case it would have been patently inequitable to enforce the claim which the plaintiff had permitted to moulder for so long a time. In the Geter case, substantial improvements had been erected on the premises without protest by the true owner, while in the Norton case, the land had been divided into city lots and blocks, conveyances had been made, liens had attached to the land, and rights of third parties had come into existence. Appellant says that the land involved herein has increased in value over the years but we find in this factor, coupled with the passage of time, no such prejudice to appellant's rights as would justify us in reversing the chancellor's determination *276 that appellee's claim was not barred by laches.
By the same token, we cannot accept appellant's contention that the chancellor erred in failing to hold that appellee was estopped to assert the validity of its easement. We agree with appellant that an equitable estoppel, as affecting land titles, "is a doctrine by which a party is prevented from setting up his legal title because he has through his acts, words, or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience." Florida Land Investment Co. v. Williams, 98 Fla. 1258, 116 So. 642, 643; Hagan v. Ellis, 39 Fla. 463, 22 So. 727. But the difficulty is that we can detect no way in which appellant has been led, by appellee, into a prejudicial position. No significant improvements have been made on the land as in Mumaw v. Roberson, Fla., 60 So.2d 741. The period of time relied upon by appellant is that between 1940 and 1950, during almost all of which time appellee was in actual possession of the land under the Peeples leases. Thus, appellant is asking us to hold that appellee defeated its own ends by its own possession, but that this possession was really appellant's possession which was open, notorious, hostile and adverse to the claim of appellee. This state of facts does not fit into any conceivable extension of the doctrine of adverse possession which we can now imagine.
"An easement may be lost by an occupation on the part of a person other than the owner of the easement adverse to the right claimed, in connection with nonuser by the owner of the easement." 28 C.J.S., Easements § 63, p. 729. Italics added.
Moreover, even if the possession with which we are here concerned is the possession of the appellant, it is elementary that adverse possession cannot be permissive, Stewart, Adverse Possession, Sec. 10, 1 Florida Law and Practice, p. 318. It is also apparent that appellee, as sub-lessee, permitted the "possession" of appellant and even paid money, as sub-lessee, to help maintain it. Although appellant's activity in permitting the sub-lease of grazing rights might have been adverse, in a sense, to the claim now made by Lykes Bros., Inc., we think it falls short in law of the requisites of adverse possession.
Appellant says that appellee has abandoned its easement, but for abandonment of an easement all of the elements of an equitable estoppel must exist, Nichols v. Peck, 70 Conn. 439, 39 A. 803, 40 L.R.A. 81; Adams v. Hodgkins, 109 Me. 361, 84 A. 530, 42 L.R.A.,N.S., 741, and as we have already held, equitable estoppel does not operate in this case. Moreover, it is said to be a "general rule that an easement once established is not divested by the acts of the dominant owner in seeking and obtaining permission or license from the owner of the servient estate to make the same use of the latter's premises as could be made under the existing servitude." 17 Am.Jur., Easements, Sec. 140, pp. 1025, 1026. See also Annotation, Permission or License from Owner of Servient Estate as Extinguishing an Existing Easement, 50 A.L.R. 1296. See Powers v. Coos Bay Lumber Co., 200 Or. 329, 263 P.2d 913.
Since equitable estoppel is not present, and since the status of appellee as sub-lessee will not destroy the easement, there is nothing left but nonuser and, while nonuser may sometimes destroy an easement by prescription, the rule is general that it will not destroy an easement by grant, such as this. 28 C.J.S., Easements § 60, pp. 724-727; 17 Am.Jur., Easements, Sec. 141, p. 1026.
This brings us to consideration of the contention made on cross appeal that it was error for the chancellor to fail to provide that the grazing rights of appellee under its reservation are exclusive. We agree with appellant that no intention to *277 convey an exclusive easement in the property can be imputed to the grantor of the easement in the absence of a clear indication of such intention, City of Pasedena v. California-Michigan Land & Water Co., 17 Cal.2d 576, 110 P.2d 983, 133 A.L.R. 1186; Council v. Sanderlin, 183 N.C. 253, 111 S.E. 365, 32 A.L.R. 1527, and that such intention in the present case is by no means clear. It follows that the judgment appealed from must be, and is hereby affirmed in its entirety.
It is so ordered.
TERRELL, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.